**IN RE M.M.**

[230 N.C. App. 225 (2013)]

IN THE MATTER OF M.M.

No. COA13-600

Filed 5 November 2013

1.  **Child Abuse, Neglect, and Dependency—permanency planning order—transfer of jurisdiction—insufficient findings of fact—failure to stay proceeding**

    The trial court erred in a permanency planning order by transferring jurisdiction of the case to Michigan where the trial court's findings of fact failed to demonstrate that the trial court properly considered the relevant factors under N.C.G.S. § 50A-207(b). Moreover, the trial court failed to stay the present juvenile case upon condition that a child custody proceeding be promptly commenced in Michigan, as required by N.C.G.S. § 50A-207(c). The order was reversed and the matter was remanded to the trial court.

2.  **Child Abuse, Neglect, and Dependency—permanency planning order—child not returned home—inadequate findings of fact**

    The trial court erred in a permanency planning order by failing to make adequate findings of fact under N.C.G.S. § 7B-907(b) to support its conclusion that the child could not be returned home. The order was reversed and remanded for entry of an order with sufficient findings to support the trial court's judgment.

3.  **Child Abuse, Neglect, and Dependency—permanency planning order—waiver of future hearings—inadequate findings of fact**

    The trial court erred in a permanency planning order by failing to make sufficient findings of fact under N.C.G.S. § 7B-906(b) to support its decision to waive further review hearings. The order was reversed and the matter was remanded to the trial court for further proceedings.

4.  **Child Abuse, Neglect, and Dependency—permanency planning order—no detailed visitation plan**

    The trial court erred in a permanency planning order by failing to set forth a detailed visitation plan for respondent mother and, instead, inappropriately leaving visits within the discretion of the child's guardians. The order was reversed and the matter was remanded to the trial court.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

Appeal by respondent-mother from order entered 11 February 2013 by Judge John W. Dickson in District Court, Cumberland County. Heard in the Court of Appeals 8 October 2013.

*John Campbell for Cumberland County Department of Social Services, for petitioner-appellee.*

*Beth A. Hall for guardian ad litem.*

*Mary McCullers Reece for respondent-appellant.*

STROUD, Judge.

Respondent-mother appeals from a permanency planning order entered 11 February 2013 and amended by order entered 24 April 2013. We reverse and remand for further proceedings.

## I. Background

This is the second appeal by respondent-mother arising out of this juvenile petition, filed on 8 August 2007. The trial court adjudicated Margo dependent by order filed 17 January 2008.[1] Thereafter the court conducted several periodic review hearings. On 7 June 2011, this Court filed an opinion reversing a permanency planning order entered 21 September 2010 because the trial court failed to hear any testimony at the permanency planning hearing. *In re M.M.*, 212 N.C. App. 420, 713 S.E.2d 790, 2011 WL 2206655 (2010) (unpublished). On remand, the trial court heard testimony and entered a "corrected" permanency planning order on 11 July 2012. Respondent-mother appealed but subsequently withdrew her appeal from that order on 10 September 2012.

On 5 December 2012, the court conducted a permanency planning hearing. The trial court entered an order on 11 February 2013 which, *inter alia*, (1) changed the permanent plan to guardianship; (2) awarded legal custody and guardianship to Margo's paternal grandparents; (3) allowed Margo's father to have unsupervised visitation with the child; (4) allowed respondent-mother to have supervised visitation for one day per month not to exceed four hours in duration; (5) allowed respondent-mother to have supervised telephone contact with the child; (6) forbade the maternal grandfather and the fiancé of respondent-mother from having contact with the child unless recommended by the child's

---

1. To protect the identity of the juvenile and for ease of reading we will refer to her by pseudonym.

therapist; and (7) transferred jurisdiction to Michigan, where the paternal grandparents reside. Respondent-mother filed timely notice of appeal.

## II. Standard of Review

This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal. The trial court's conclusions of law are reviewable de novo on appeal.

*In re T.R.M.*, 208 N.C. App. 160, 162, 702 S.E.2d 108, 110 (2010) (citation and quotation marks omitted).

## III. Transfer of Jurisdiction

[1] Respondent-mother contends the trial court erred by transferring "venue" to Michigan. The record reflects that in its original order filed on 11 February 2013, the court incorrectly used the terminology of "venue" in reference to transferring the case to Michigan. The court filed a corrected order on 24 April 2013 in which it struck through the words "transferring venue" and replaced them with the words "relinquishing jurisdiction." The court also deleted some, but not all, other uses of the word "venue."

A court has the authority on its own motion to correct a clerical mistake in its judgment or order pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(a) (2011) as long as the correction does not substantively change the order or judgment. *Spencer v. Spencer*, 156 N.C. App. 1, 10-11, 575 S.E.2d 780, 786 (2003). It is clear from the transcript and the context of the order specifically identifying Michigan that the trial court intended to transfer jurisdiction to another state rather than transfer venue to another county in North Carolina. The changes do not have any substantive effect.

Respondent-mother contends that even if the court's order is construed as declining jurisdiction based upon a determination of inconvenient forum pursuant to N.C. Gen. Stat. § 50A-207, the court's findings of fact and conclusions of law are inadequate. We agree.

A court having jurisdiction to make a child custody determination "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances, and that a court of another state is a more appropriate forum." N.C. Gen. Stat.

§ 50A-207(a) (2011). A child custody determination includes one made in abuse, dependency or neglect proceedings involving the child. *In re Van Kooten*, 126 N.C. App. 764, 768, 487 S.E.2d 160, 162-63 (1997), *app. dismissed*, 347 N.C. 576, 502 S.E.2d 618 (1998); N.C. Gen. Stat. § 50A-102(4) (2011). Before making a determination that this state is an inconvenient forum, the court must consider whether it is appropriate for a court of another state to exercise jurisdiction. N.C. Gen. Stat. § 50A-207(b).

In deciding whether it is appropriate for the court of another state to exercise jurisdiction, the trial court

> shall consider all relevant factors, including:
>
> (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) The length of time the child has resided outside this State;
>
> (3) The distance between the court in this State and the court in the state that would assume jurisdiction;
>
> (4) The relative financial circumstances of the parties;
>
> (5) Any agreement of the parties as to which state should assume jurisdiction;
>
> (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
> (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

N.C. Gen. Stat. § 50A-207(b).

The decision to relinquish jurisdiction to another state on the basis of more convenient forum is reviewed for an abuse of discretion. *Kelly v. Kelly*, 77 N.C. App. 632, 635, 335 S.E.2d 780, 783 (1985). Nevertheless, where it determines that the current forum is inconvenient, the trial court must make sufficient findings of fact to demonstrate that it properly

considered the relevant factors listed in N.C. Gen. Stat. § 50A-207(b). *Velasquez v. Ralls*, 192 N.C. App. 505, 509, 665 S.E.2d 825, 827 (2008) (noting that findings about "[t]he factors listed in N.C.G.S. § 50A-207(b) are necessary when the current forum is inconvenient.").

Here, the trial court found that Margo had lived in Michigan with her paternal grandparents since 22 July 2010 and that a majority of the parties live in the State of Michigan. Although the court had previously found that respondent-mother and respondent-father had engaged in domestic violence toward one another, the trial court made no finding regarding the likelihood of such violence recurring or whether Michigan is better situated to protect the juvenile. The trial court also made no findings about the nature and location of the evidence, the relative familiarity of the courts of Michigan and North Carolina with this case (which has never before been considered by a Michigan court in any way), or the relative financial circumstances of the parties. Thus, the findings here fail to demonstrate that the trial court properly considered the relevant factors under N.C. Gen. Stat. § 50A-207(b). Therefore, we reverse its order transferring jurisdiction to Michigan.

If a trial court considering a child custody matter determines that the current jurisdiction is an inconvenient forum and that another jurisdiction would be a more appropriate forum, it "*shall* stay the proceedings *upon condition that a child custody proceeding be promptly commenced in another designated state . . . .*" N.C. Gen. Stat. § 50A-207(c) (emphasis added). "It is well established that the word 'shall' is generally imperative or mandatory." *Boylan v. Verizon Wireless*, ___ N.C. App. ___, ___, 736 S.E.2d 773, 781 (2012) (citation and quotation marks omitted). The trial court here simply purported to transfer jurisdiction, effectively dismissing the case in North Carolina. It did not stay the present case and condition the stay on the commencement of a child custody proceeding in Michigan. The record before us does not indicate that there is or ever has been a custody proceeding of any sort regarding Margo in Michigan.

Failure to condition an order transferring jurisdiction on the filing of a child custody proceeding in the new jurisdiction leaves the child and the proceedings in legal limbo, something that the Uniform Child-Custody Jurisdiction Act is intended to prevent. *See* N.C. Gen. Stat. § 50A-207, Official Comment (noting that a court declining jurisdiction on inconvenient forum grounds "may not simply dismiss the action. To do so would leave the case in limbo."). It also ignores the mandatory procedure contained in N.C. Gen. Stat. § 50A-207(c).

If on remand the trial court should again determine that it should decline jurisdiction and it makes sufficient findings to support its determination that North Carolina is an inconvenient forum and that Michigan is an appropriate forum, it must stay the present juvenile case "upon condition that a child custody proceeding be promptly commenced in" Michigan. N.C. Gen. Stat. § 50A-207(c).[2]

## IV. Findings under N.C. Gen. Stat. § 7B-907(b)

**[2]** Respondent-mother next contends the trial court erred in concluding that return of the juvenile to the custody of her parents would be contrary to the child's best interest and that a permanent plan of guardianship was in the child's best interests. She argues certain findings of fact are actually conclusions of law while other findings are actually recitations of evidence, and that when those findings are omitted, the remaining findings are not sufficient to support a conclusion that it is in the child's best interest for the child's paternal grandparents to have custody and guardianship of the child. We agree that the current findings are inadequate under N.C. Gen. Stat. § 7B-907(b).

The general purpose of a permanency planning hearing is to develop a plan to achieve a safe, permanent home for a juvenile within a reasonable period of time. N.C. Gen. Stat. § 7B-907(a) (2011).

> At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
>
> (1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
>
> (2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

---

2. We also note that it appears the trial court may have intended to end all DSS involvement in the case and create a Chapter 50 custody action as it ceased DSS review hearings and made no mention of involving Michigan DSS. The trial court does indeed have the authority to terminate the court's jurisdiction·in the juvenile proceeding and create a Chapter 50 custody action, provided it makes the necessary findings and conclusions. *See generally* N.C. Gen. Stat. § 7B-911 (2011). These findings would be in addition to those required to transfer jurisdiction on the basis of inconvenient forum.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B 907(b) (2011).

The court must make findings of fact as to all of the relevant criteria. *In re J.S.*, 165 N.C. App. 509, 512, 598 S.E.2d 658, 660-61 (2004). These findings must be of "ultimate facts essential to support the conclusions of law" and must be sufficiently specific to enable the appellate court to determine whether the findings and the conclusions of law are correct. *In re M.R.D.C.*, 166 N.C. App. 693, 696, 603 S.E.2d 890, 892 (2004) (citation and quotation marks omitted), *disc. review denied*, 359 N.C. 321, 611 S.E.2d 413 (2005). A mislabeled finding of fact which is in reality a conclusion of law will be reviewed as such. *Id.* at 697, 603 S.E.2d at 893.

Respondent-mother is correct that many of the trial court's "findings" merely recite assertions made by parties and witnesses or even arguments by the parties' attorneys. The trial court's crucial findings under N.C. Gen. Stat. § 7B-907(b) were as follows:

34. That it is not possible for the juvenile to return home immediately or within the next six (6) months inasmuch as the conditions which led to the removal of the juvenile from the home have not been alleviated and the juvenile is in need of more adequate care and supervision than can be provided by the Respondents at this time.

. . . .

38. Return of the juvenile to the custody of the Respondents would be contrary to the welfare and best interest of the juvenile inasmuch as the conditions which led to the removal of the juvenile from the home have not been alleviated and the juvenile is in need of more

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

adequate care and supervision than can be provided by the Respondents at this time.

It is not clear from the order which "condition" the trial court was referring to as the one that led to the removal of Margo from the home. The primary substantive factual finding in the order under review is this:

2.   That the court readopts findings made in previous Orders entered in this matter.

This finding is followed by about three pages listing the "concerns," contentions, and requests of the respondent-mother, respondent-father, paternal grandparents, DSS, and GAL, most of which are simply recitations of evidence or argument and not actual findings of fact. Thus, in order to discern the "condition" which lead to the child's removal and which cannot be corrected within the next six months—a condition which the trial court claims to have previously found as fact in "previous orders"—we have been required to inspect carefully all 1014 pages of this record on appeal. These findings are contained in numerous orders entered over a period of six years and the order before us does not refer specifically to any particular issue or order. The trial court's findings in some of these prior orders are problematic in a similar way to the findings in the order presently on appeal. Most of the findings relate assertions, feelings, or fears of various parties and witnesses; few resolve material, disputed factual issues.

Our review was complicated further by the fact that several orders are flatly contradictory. For example, there is a series of orders from May 2010 until May 2012,[3] all of which continued the removal of the child from the parents and granted custody to the paternal grandparents. Then, based upon the 7 May 2012 hearing, the court did a 180 degree turn and entered an order which readopted the findings in the prior orders but granted joint legal and physical custody to respondents mother and father and, in another switch from prior orders, permitted respondent-mother's fiancé Tony to have contact with the child.[4] Thus

---

3.   The order from the 7 May 2012 hearing was actually entered on 1 August 2012.

4.   The conflicting orders contributed to discord and confusion at respondent-mother's 7 August 2011 visit in Michigan, at which her fiancé was present. The paternal grandmother objected to his presence, producing to the Michigan law enforcement officer a copy of the 21 September 2010 order (which was reversed on 7 June 2011) in support of her claim that he was not permitted in the presence of the child; respondent-mother relied upon a 4 May 2011 order which did not prevent Tony from being present. The 4 May 2011 order was effective at that time, while the 21 September 2010 order was not, although the Michigan officer had no way of knowing this.

we have orders which include negative findings which led the court to restrict the visitation of both respondent-mother and respondent-father and to prohibit contact with Tony, and we have orders which do the opposite, but the findings in all of these prior orders were "readopted" in the order under appeal.[5]

But in an effort to resolve this case, which has been pending for over 6 years, as promptly as possible, we have searched through the prior orders and the juvenile petition underlying this entire action seeking the "condition" that the trial court found could not be corrected. There are at least four possibilities: (1) respondent-parents' use of drugs, which was one of the allegations in the juvenile petition and the *only* reason that the juvenile was adjudicated dependent; (2) respondent-parents' domestic violence toward each other in the home when the child was present; (3) respondent-parents' "abnormal lifestyle," which the trial court found was "not conductive [sic] to child rearing"; and (4) the juvenile's accusations of abuse against respondent-mother's fiancé and father.

The order before us does limit the possibilities to some extent. First, the trial court specifically found that respondent-mother's drug use was no longer a concern. Indeed, the juvenile was returned to custody of her parents in April 2008 because they had addressed the trial court's concerns about their drug use—the one condition found by the trial court in its dependency adjudication and the reason for the juvenile's initial removal from the home.[6] The trial court has not found that drug use continues to interfere with respondent-parents' ability to care for their child. Thus, this condition is not one which respondent-mother has failed to alleviate and could not be the basis for finding that the child could not be returned to the home from which she was removed.

Second, although the trial court found that the respondent-parents had been violent with one another in front of the juvenile, it never found that domestic violence is likely to recur, especially in light of the fact that respondent-parents are no longer living together and no longer maintain an ongoing romantic relationship. In fact, the evidence does not indicate any on-going domestic violence in either respondent-mother's or respondent-father's relationships or homes.

---

5. We have assumed that the trial court did not include the order of 21 September 2010, which was reversed previously by this Court, and we have not considered the findings of that order as ones that may have been considered as "readopted."

6. Domestic violence had also been alleged in the juvenile petition, but the juvenile was not adjudicated dependent on that basis.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

In between the trial court's decision to return the juvenile to her parents' custody in 2008 and the trial court's next involvement in this matter, in 2010, the respondent-parents had engaged in domestic violence toward one another while co-habiting. After one of these episodes in late 2009, respondent-father moved to Michigan with Margo and stayed with his parents without the consent of respondent-mother, who had joint legal and physical custody. At that time, respondent-father had respondent-mother involuntarily committed; she was quickly released with no diagnosis or recommendation for treatment.

In April 2010, respondent-mother filed a motion for review asking that respondent-father be ordered to return the juvenile to North Carolina and moved that the trial court amend its prior order in light of the changed circumstance of the then-recent domestic violence. The trial court never addressed respondent-father's removal of the child from North Carolina, except to recognize that it happened, and the court directed psychological evaluations of both parents and child; many review hearings ensued.

The trial court has never found that respondent parents continued to act in a violent manner toward one another after respondent-father moved to Michigan or that such violence is likely to recur. Indeed, in the 1 August 2012 order,[7] the trial court returned joint custody to respondent-parents, finding such an arrangement to be in the juvenile's best interest and giving respondent-father primary physical custody. The trial court granted custody to the paternal grandparents in the order currently on appeal, entered 11 February 2013. Although there may be several good reasons for the trial court's decision to put Margo's custody back with her grandparents between May 2012 and February 2013, there are no findings of acts of domestic violence during this time. It would seem that the trial court's decision to return joint custody to respondent-parents in May 2012 indicates that by that point domestic violence was not an ongoing issue that respondent-parents have failed to alleviate. Thus, the trial court cannot have been referring to the parties' inability to correct conditions of domestic violence in its February 2013 order.

Third, by order entered 11 July 2012, the trial court found

[t]hat the Respondent Parents lead an abnormal lifestyle, one of sexual deviancy and substance abuse. This lifestyle

---

7. This date, which is the date the order was filed, is somewhat misleading—the hearing occurred on 7 May 2012, and by 1 August 2012 several more hearings had been held and orders entered which had placed the child back in custody of the paternal grandparents.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

is not conductive [sic] to child rearing, and the Court is concerned that the Juvenile will be further impacted by the Respondents' lifestyle and the people who surround the parents and engage in a similar lifestyle; the Respondent Mother is bisexual and the Respondent Father has cross dressed in the past.

As noted above, the "substance abuse" portion of this finding is no longer relevant, since the trial court found that respondent-mother no longer engages in this activity. This leaves only the finding of "sexual deviancy," and as to the appellant before us, that she is bisexual.[8] The trial court made no findings as to any particular sexual activity which respondent-mother has engaged in which has affected the juvenile in any way. Further, it is not self-evident that respondent-mother's sexual orientation has an adverse effect on the welfare of the child. *See Pulliam v. Smith*, 348 N.C. 616, 627, 501 S.E.2d 898, 904 (1998) ("Nor does this Court hold that the mere homosexual status of a parent is sufficient, taken alone, to support denying such parent custody of his or her child or children."); *Shipman v. Shipman*, 357 N.C. 471, 478, 586 S.E.2d 250, 256 (2003) (noting that it is not self-evident that a change in a parent's sexual orientation was a substantial change affecting the welfare of the child). Thus, even assuming the trial court's findings that respondent-mother is bisexual and that people who surround her "engage in a similar lifestyle" are supported by the evidence, the mere characterization of this lifestyle as "abnormal" and "not conductive [sic] to child rearing" falls far short of the findings required to link these circumstances to the child's welfare.[9]

There were no findings that these "lifestyle" choices were having any negative impact on Margo or how they related to the parents' abilities to care for her. Thus, even if these facts are still true of the parents today, these conditions were not those that led to the juvenile's removal or which DSS or the trial court ever sought to modify and failure to remedy them cannot be a basis to take custody away from the juvenile's biological parents.

Finally, and most seriously, the trial court found that the juvenile had accused her maternal grandfather and respondent-mother's fiancé

---

8. Since respondent-father did not appeal, we will not address the portion of this finding as to his having "cross dressed in the past."

9. We also note that the trial court apparently has less concern—in the most recent order, at least—regarding respondent-father's having "cross dressed" in the past, as Margo is now living with his parents and he has full and unsupervised access to Margo.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

of sexual abuse in October 2011. It never found, however, that this abuse actually occurred—a fact vehemently denied by respondent-mother, her father, and her fiancé. The juvenile had initially also accused her paternal grandfather—the one with whom she now lives in Michigan—of sexual abuse, but later retracted the accusation. Police in Michigan investigated the allegations against the paternal grandfather, but stopped investigating once the juvenile retracted her accusation. The record in this case is voluminous, but we can find no indication that the juvenile's accusations against her maternal grandfather or respondent-mother's fiancé were ever formally investigated in North Carolina by law enforcement or even DSS, although it does appear that Michigan DSS transmitted this report to North Carolina.

We are unable to discern from the record before us why the allegations of sexual abuse against the paternal grandfather, which led at least to a formal investigation, are of less concern to the trial court than the allegations against the maternal grandfather and fiancé, which have never even been investigated, much less substantiated. Despite the fact that the child's therapist in Michigan repeatedly stressed the importance of all of the caregivers believing the child's claims of abuse, even she noted that "this court case may be more about custody than about the appropriateness and safest environment for" the child.

The trial court found it quite significant that respondent-mother continues to disbelieve her daughter's assertions that she was sexually abused by her maternal grandfather or Tony. We find it significant that the trial court, while faulting respondent-mother for her disbelief, also has never found that any sexual abuse occurred. In other words, the trial court expects respondent-mother to accept the allegations of sexual abuse as true and to act accordingly even though the trial court has not accepted the allegations as true.[10] Indeed, well after the juvenile accused respondent-mother's fiancé of physical abuse, the trial court's orders were inconsistent in that some permitted him to be in the child's presence and others prohibited this. It is inconsistent for the trial court to deprive respondent-mother of custody of her daughter simply for failing to believe an accusation that the trial court has never found to be true.

---

10. The actual finding is that "Respondent Mother continues not to believe the juvenile's statements about being sexually abused by her maternal grandfather and the Respondent Mother's fiancé. She has indicated that she has no intention of breaking off her relationship with her fiancé against whom the juvenile has made accusations of sexual abuse." In fact, according to respondent-father's motion for review filed in November 2011, the child claimed that Tony spanked her and hit her in the mouth. Although this may be abuse, it is not sexual abuse.

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

Despite the lack of a finding that someone actually sexually or physically abused Margo, there was evidence which would indicate that Margo has intense fear of respondent-mother's fiancé and her maternal grandfather. In July 2012, Margo's therapist was concerned that Margo's "caregivers"—apparently referring to respondent-mother—do not believe Margo's accusations of abuse. She noted that Margo continued to express "intense fear" of respondent-mother's fiancé, and that even if she was not abused, she was very fearful and it is "even more harmful" not to be believed by caregivers.[11] While the child's fears, whether grounded in fact or not, are certainly a valid consideration, the order leaves several huge questions unanswered: Was Margo sexually and/or physically abused? If so, by whom? If she was not, why is she still so fearful?

The evidence of respondent-mother's reactions to the accusations of sexual and/or physical abuse, which included interrogating her daughter about it on video and posting the video to Facebook, could support a finding that respondent-mother has acted in an inappropriate manner and that her actions have traumatized Margo, regardless of the veracity of the accusations. Respondent-mother's actions have no doubt worsened an already bad situation. Nevertheless, the trial court did not resolve the material disputes of fact as to what the respondent-mother had done or failed to do, find that respondent-mother's actions were having a negative impact on the juvenile, or that additional counseling on how to properly deal with the issue would not alter respondent-mother's behavior.

Two other related issues are (1) respondent-mother's misrepresentations regarding where she was living and with whom; and (2) respondent-mother's violations of various orders by the trial court which directed her to cease posting information regarding Margo and this case on various social media websites, primarily regarding the abuse allegations. Both the trial court and the child's therapist clearly had concerns about respondent-mother's refusal or inability to follow the rules set forth by the trial court, but the order under review does not include any specific findings on this issue, and we are unable to discern from the multitude of prior orders if this was an additional reason for the trial court's order.

Although this last issue of the accusation of sexual or physical abuse *appears* to be the one with which the trial court was most concerned,

---

11. We are also unable to discern if the trial court's restrictions on the maternal grandfather were related to concerns regarding abuse or if they were based upon his inappropriate outbursts in various court hearings, which led on one occasion to his incarceration for 15 days and to an order barring him from attending future hearings.

it is unclear from the trial court's findings how it believed respondent-mother failed to correct a "condition" that had led to the juvenile's removal, since the only condition that actually did lead to removal—substance abuse—was resolved several years ago. Therefore, from the findings, it is not clear to us why it is not possible to return the juvenile to the home immediately or in the next six months.

The trial court is required to resolve the material, disputed factual issues by its findings of fact. *See In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). These findings must be based upon clear, cogent, and convincing evidence. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). Findings that a party or attorney asserted some fact or felt a particular way about an issue without a finding by the court resolving the conflicting assertions is not sufficient. *See In re C.L.C.*, 171 N.C. App. 438, 446, 615 S.E.2d 704, 708 (2005), *disc. rev. allowed*, 360 N.C. 289, 628 S.E.2d 251, *aff'd in part and disc. rev. dismissed in part*, 360 N.C. 475, 628 S.E.2d 760 (2006). Additionally, the trial court cannot simply incorporate reports by DSS or the GAL to substitute for actual findings of fact. *In re M.R.D.C.*, 166 N.C. App. at 698, 603 S.E.2d at 893. The trial court's "findings [of ultimate fact] must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." *Id.* (citation and quotation marks omitted).

Although it can be appropriate to incorporate findings from prior orders, assuming that the standards of proof were the same as in the current order, where the trial court incorporates the orders wholesale without identifying at least the general import of the prior findings it is adopting, proper appellate review is impossible. *See Crocker v. Crocker*, 190 N.C. App. 165, 170, 660 S.E.2d 212, 215 (2008) (noting that "[t]he general incorporation of all findings from other court documents is not sufficiently specific to demonstrate whether the trial judge properly considered the statutory factors for awarding alimony.").

The ultimate findings here are insufficient for us to test the correctness of the judgment because we cannot discern what "condition" the trial court believed that respondent-mother has failed to alleviate which makes return of the juvenile to the home impossible within the next 6 months. Therefore, we must reverse the permanency planning order and remand for entry of an order with sufficient findings to support the trial court's judgment.

### V. Future Review Hearings

**[3]** Respondent-mother next contests the trial court's decision to waive further review hearings. She contends the court erred by failing to make

the findings of fact required by N.C. Gen. Stat. § 7B-906(b) in order to waive further periodic review hearings. This statute permits a court to waive further review hearings if the court finds by clear, cogent and convincing evidence that:

> (1) The juvenile has resided with a relative or has been in the custody of another suitable person for a period of at least one year;
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests;
>
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearing be held every six months;
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and
>
> (5) The court order has designated the relative or other suitable person as the juvenile's permanent caretaker or guardian of the person.

N.C. Gen. Stat. § 7B-906(b) (2011). This Court has held that the trial court must make written findings of fact satisfying each of the above criteria in its order. *In re L.B.*, 184 N.C. App. 442, 447, 646 S.E.2d 411, 414 (2007). An order which fails to address all of the criteria will be reversed and remanded for entry of an order containing findings of fact in compliance with N.C. Gen. Stat. § 7B-906(b). *Id.* at 449, 646 S.E.2d at 415.

Respondent-mother submits, and petitioner and guardian ad litem appropriately concede, that the court's order does not address the third and fourth criteria listed above. Perhaps the trial court found that no further review hearing were needed because it purported to transfer the case to Michigan, as addressed above. It also appears, as noted above, that the trial court may have meant to terminate DSS's involvement in this case and transfer to a Chapter 50 action, as we acknowledge that the usefulness of DSS's continued involvement in this case is not entirely apparent. In any event, the trial court may consider these matters on remand. Accordingly, we reverse this portion of the order.

## VI. Visitation Plan

[4] Respondent-mother lastly contends the order fails to set out a detailed visitation plan. This Court has held that a visitation plan ordered by the trial court "must provide for a minimum outline of visitation, such

**IN RE M.M.**

[230 N.C. App. 225 (2013)]

as the time, place and conditions under which visitation may be exercised." *In re E.C.*, 174 N.C. App. 517, 523, 621 S.E.2d 647, 652 (2005) (citation omitted). The court may not leave the terms of visitation in the discretion of the custodian. *In re C.P.*, 181 N.C. App. 698, 705, 641 S.E.2d 13, 18 (2007).

The order at bar provides that respondent-mother "shall be allowed supervised visitation one (1) day a month and not to exceed four (4) hours in duration. Said visitation shall occur at Safe Place in the [sic] Saginaw, Michigan." The order also provides that any costs associated with the visitation at "Safe Place" is to be split between the child's parents. Petitioner and the guardian ad litem concede that the order is deficient and inappropriately leaves visits within the discretion of the guardians, and that on remand, the trial court should be required to set forth the required specifics in its order.

Leaving the visitation provisions in the discretion of the guardians is even more problematic than usual in this case, since Margo now resides in Michigan and respondent-mother must travel to Michigan to exercise the four hours of time she was granted. Any confusion or disagreement regarding the visitation scheduling may result in respondent-mother's inability to make adequate travel arrangements and the visitation simply will not happen. Indeed, past history in this case would indicate that visitation is likely not to go smoothly in the absence of specific provisions. We accordingly reverse this portion of the order as well.

## VII. Conclusion

The trial court failed to make necessary findings to support its decision to transfer jurisdiction to Michigan, end review hearings, and not to return custody to the respondent-parents. Further, the trial court failed to set out an adequate visitation schedule. Therefore, we must reverse the entirety of the 11 February 2013 order and the amended order entered 24 April 2013 and remand for further proceedings.

REVERSED and REMANDED.

Judges McGEE and BRYANT concur.