IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-869

Filed: 1 September 2020

Mecklenburg County, No. 18 CVD 984

FLORIAN HALILI, Plaintiff

v.

DENADA RAMNISHTA, Defendant

Appeal by Plaintiff from Orders entered 9 August 2018 and 28 November 2018 by Judge Gary L. Henderson in Mecklenburg County District Court. Heard in the Court of Appeals 29 April 2020.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellant.*

*Jonathan McGirt for defendant-appellee.*

HAMPSON, Judge.

## Factual and Procedural Background

Florian Halili (Plaintiff) appeals from (1) an Order granting a Motion to Dismiss (Dismissal Order) filed by Denada Ramnishta (Defendant) on the basis the trial court did not have subject-matter jurisdiction over this child-custody action under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA)[1] and (2) an Order denying Plaintiff's Motion for a New Trial brought under Rule 59 of the

---

[1] As codified in North Carolina at N.C. Gen. Stat. § 50A-101 *et seq.* (2019).

North Carolina Rules of Civil Procedure (Rule 59 Order). At the heart of this case are the trial court's Conclusions in the Dismissal Order that (1) North Carolina was not the "home state" of the parties' oldest child, Opal,[2] and (2) although North Carolina was the "home state" of the parties' youngest child, Riley, North Carolina was an inconvenient forum for this litigation. The Record before us tends to show the following:

On 19 January 2018, Plaintiff, at the time acting pro se, filed a Complaint in Mecklenburg County District Court, seeking temporary and permanent custody of the minor children.[3] On 2 March 2018, Defendant filed her Motion to Dismiss in the current action, requesting the trial court dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction. Defendant's Motion to Dismiss asserted the trial court lacked subject-matter jurisdiction under the UCCJEA because the state of New York was Opal's home state and North Carolina was an inconvenient forum in which to determine the issue of child custody for Riley.

The trial court held a hearing on Defendant's Motion to Dismiss on 28 June 2018, at which both parties presented evidence and arguments to the trial court. On 9 August 2018, the trial court entered its Dismissal Order.

---

[2] In briefing, the parties refer to the children by their initials. We apply pseudonyms for the minor children for ease of reading.

[3] Included in Plaintiff's prayer for relief in this custody action was a concomitant request for the trial court to set child support.

In the Dismissal Order, the trial court made Findings of Fact that Plaintiff does not challenge on appeal. These Findings of Fact are thus binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (holding unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal (citations omitted)). Therefore, these Findings form the operative facts of this case, including:

> 1.  [Plaintiff] currently resides in Mecklenburg County, North Carolina, and [Defendant] currently resides in New York County, New York.
>
> 2.  The parties were married to each other in August of 2007 in New York, and permanently physically separated on January 11, 2018.
>
> 3.  There are two (2) children of the parties' marriage, namely, [Opal] . . . and [Riley] . . . .
>
> 4.  [Opal] was born in New York State and [Riley] was born in Charlotte, North Carolina.
>
> 5.  From July 11, 2011, and until August 17, 2017, the parties and [Opal] resided in New York County, New York. On August 17, 2017, the parties and [Opal] left New York and began residing in Charlotte, North Carolina on August 18, 2017. On January 11, 2018, [Defendant] and the minor children left Charlotte, North Carolina, and returned to their home in New York, New York.
>
> 6.  It is undisputed the parties had the intent to permanently relocate from New York to North Carolina and that move would be for a period of time longer than one (1) year. [Defendant] intended at one point in time that the move to North Carolina would be approximately two (2) to three (3) years.

[Plaintiff] intended at one point in time that the move to North Carolina would be approximately five (5) years.

7.    As evidence of intent to move from New York to North Carolina, the parties listed their New York coop apartment for sale in June 2017. However, any sale would not occur earlier than three (3) months later due to the building application and approval process for the coop.

8.    As evidence of intent to move from New York to North Carolina, in April 2017, the parties purchased a home in Charlotte, North Carolina, in addition to the existing condominium they own in Charlotte. The parties executed loan documents for this new home indicating that they would occupy the home within sixty (60) days following the purchase. However, the parties did not occupy the home within this time period.

9.    As evidence of intent to move from New York to North Carolina, [Defendant] searched for, and accepted, a job offer on April 1, 2017 in Charlotte, but the record is clear that the parties did not move to Charlotte at this time.

10.    As evidence of intent to move from New York to North Carolina, in January 2017, [Defendant] applied for a school in Charlotte for [Opal] to attend beginning August 2017.

11.    The parties moved to North Carolina from New York, with the intent to move, on August 17, 2017. This date is supported by many facts, including:

    a.    The parties' actions to make the New York apartment unhabitable by returning the cable television box on August 17, 2017, and forwarding the New York mail to Charlotte on September 1, 2017.

    b.    Text communications from [Defendant] to an individual on August 21, 2017, indicating she moved to Charlotte, North Carolina, the preceding weekend.

     c.     The parties and [Opal] ([Riley] having not yet been born) packing up their New York registered car with items necessary to live in North Carolina and driving to Charlotte and arriving on August 18, 2017. These items included [Plaintiff's] wine collection and the parties' safe that contained numerous important documents.

     d.     Numerous pictures of [Opal] in the New York apartment on August 17, 2017, saying goodbye to the New York home.

     e.     The Charlotte home was professionally cleaned immediately prior to the parties and [Opal] arriving in Charlotte on August 18, 2017. Additionally, a washer and dryer had been installed and available for use in the Charlotte home prior to the family['s] arrival.

12.     The parties and [Opal] ([Riley] having not yet been born), visited Charlotte, North Carolina for a vacation from June 28, 2017 until July 9, 2017, when they flew via airplane roundtrip from New York. During this vacation, the parties stayed in a hotel for the first three (3) nights of their trip and then stayed for the remainder at their unfurnished home in Charlotte. The hotel had Internet access for [Defendant] to work and a pool for [Opal] to swim, which was part of the reason for choosing this hotel. The decision to vacate the hotel was made by [Plaintiff] and not [Defendant], who was approximately six (6) month's pregnant at the time. [Defendant's] testimony was more credible as to why the parties and the minor children spent the remainder of this visit at their unfurnished home. The Charlotte home was not habitable at this time. This home was dirty from construction, did not have necessary living items, including, but not limited to, utensils, furniture, washer and dryer, cable or Internet service.

13.     During the visit to Charlotte, North Carolina from June 28, 2017 until July 9, 2017, [Defendant] met with potential doctors to assist in the delivery of [Riley] in September 2017. On June 29, 2017, [Defendant] sent a text message to a friend stating that, ". . . We are in clt till 7/8. I am working out of here so I can meet with some doctors and visit the two hospitals."

14. [Opal] resided in North Carolina from August 18, 2017 until January 11, 2018. [Opal] did not reside in North Carolina for six (6) months preceding the filing of [Plaintiff's] Complaint.

15. Between January 8th, 2018 and January 19th, 2018, the parties were in substantial marital conflict such that [Defendant] chose to move back to their New York apartment with the minor children on January 11th, 2018. The subject and actions of the parties during this marital conflict is before the New York County Family Court for permanent adjudication[.]

. . . .

21. There is also a pending New York Supreme Court action, filed by [Defendant] . . . for the following relief: absolute divorce, child custody, child support, maintenance, an equitable distribution of marital property . . . and related relief.

In its Dismissal Order, the trial court concluded it lacked subject-matter jurisdiction under the UCCJEA to make an initial custody decision regarding Opal because North Carolina was not Opal's home state. The trial court concluded North Carolina was Riley's home state, but North Carolina was an inconvenient forum and New York was a more convenient forum, thereby relinquishing its jurisdiction over Riley. Having made these Conclusions, the trial court finally concluded it "lacks subject matter jurisdiction to adjudicate the issue of child custody regarding the minor children."

On 20 August 2018, Plaintiff filed a Motion for a New Trial requesting the trial court grant Plaintiff a new trial. The trial court held a hearing on Plaintiff's Rule 59 Motion on 22 October 2018. On 28 November 2018, the trial court entered its Rule

59 Order denying Plaintiff's Motion for a New Trial. Plaintiff filed Notice of Appeal from both the Dismissal Order and Rule 59 Order on 2 January 2019.

**Appellate Jurisdiction**

Before addressing subject-matter jurisdiction under the UCCJEA, we must resolve an issue of appellate jurisdiction. Defendant has filed a Motion to Dismiss Appeal and Motion for Appellate Sanctions contending Plaintiff's Notice of Appeal was untimely filed five days late—thereby depriving this Court of jurisdiction over the appeal under N.C.R. App. P. 3(c)(1). Plaintiff counters Defendant's delayed and/or defective service of the trial court's Rule 59 Order tolled the time for filing Notice of Appeal and, as such, his appeal was timely noticed.[4]

We acknowledge the parties appear to have spared no effort in their vigorous litigation (and re-litigation) of this issue both in the trial court and in this Court (both in motions and in briefs). We, however, decline to wade into the factual and credibility determinations necessary to conclusively vindicate either party on this particular procedural dispute. Rather, Plaintiff has also filed a Petition for Writ of Certiorari with our Court, seeking review of the trial court's Orders in the event we conclude Plaintiff's Notice of Appeal was untimely. Presuming *arguendo* Plaintiff's Notice of Appeal was untimely having been filed more than thirty days after entry of

---

[4] On 6 January 2020, Plaintiff filed with this Court a Motion to Tax Costs and Have Other Penalties Imposed Against Appellee (Motion to Tax Costs). Both parties' Motions seek to impose either sanctions or tax costs against the other party. In our discretion, we deny both Plaintiff's Motion to Tax Costs and Defendant's Motion for Appellate Sanctions. *See* N.C.R. App. P. 25(b); 34(b).

the trial court's Rule 59 Order, in our discretion, we grant Plaintiff's Petition for Writ of Certiorari. N.C.R. App. P. 21(a)(1); *see also Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ("Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner."). Because we grant Plaintiff's Petition for Writ of Certiorari, we dismiss as moot Defendant's Motion to Dismiss Appeal.

## Issues

The dispositive issues in this case are whether (I) the trial court erred by concluding North Carolina was not Opal's home state under the UCCJEA; (II) the trial court erred by declining to exercise jurisdiction over Riley after concluding North Carolina was an inconvenient forum; and (III) the trial court acted under a misapprehension of the law in concluding it lacked subject-matter jurisdiction to adjudicate the issue of child custody regarding the minor children.

## Analysis

### I. Home-State Determination

Plaintiff first contends the trial court erred by concluding it lacked subject-matter jurisdiction over Opal pursuant to the UCCJEA on the basis North Carolina was not Opal's home state.

*A. Standard of Review*

As noted above, Plaintiff does not challenge the trial court's Findings of Fact, rather narrowing his focus on the question of whether those Findings support the trial court's Conclusion it had no jurisdiction under the UCCJEA as it related to Opal. "Whether the trial court has jurisdiction under the UCCJEA is a question of law[.]" *In re J.H.*, 244 N.C. App. 255, 260, 780 S.E.2d 228, 233 (2015) (citation omitted). Accordingly, we review the trial court's conclusions de novo. *See Gerhauser v. Van Bourgondien*, 238 N.C. App. 275, 281, 767 S.E.2d 378, 383 (2014) (citations omitted).

*B. Discussion*

A North Carolina court has jurisdiction to make an initial child-custody determination under the UCCJEA if North Carolina was

> the home state of the child on the date of the commencement of the proceeding, *or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State*[.]

N.C. Gen. Stat. § 50A-201(a)(1) (2019) (emphasis added). A child's "home state" is

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id.* § 50A-102(7) (2019). Section 50A-102(5) defines "commencement" for UCCJEA purposes as "the filing of the first pleading in a proceeding." *Id.* § 50A-102(5).

Here, the trial court found:

5.     From July 11, 2011, and until August 17, 2017, the parties and [Opal] resided in New York County, New York.  On August 17, 2017, the parties and [Opal] left New York and began residing in Charlotte, North Carolina on August 18, 2017.  On January 11, 2018, [Defendant] and the minor children left Charlotte, North Carolina, and returned to their home in New York, New York.

. . . .

12.     The parties and [Opal] ([Riley] having not yet been born), visited Charlotte, North Carolina for a vacation from June 28, 2017 until July 9, 2017, when they flew via airplane roundtrip from New York.  During this vacation, the parties stayed in a hotel for the first three (3) nights of their trip and then stayed for the remainder at their unfurnished home in Charlotte.  The hotel had Internet access for [Defendant] to work and a pool for [Opal] to swim, which was part of the reason for choosing this hotel.  The decision to vacate the hotel was made by [Plaintiff] and not [Defendant], who was approximately six (6) month's pregnant at the time.  [Defendant's] testimony was more credible as to why the parties and the minor children spent the remainder of this visit at their unfurnished home.  The Charlotte home was not habitable at this time.  This home was dirty from construction, did not have necessary living items, including, but not limited to, utensils, furniture, washer and dryer, cable or Internet service.

. . . .

14.     [Opal] resided in North Carolina from August 18, 2017 until January 11, 2018.  [Opal] did not reside in North Carolina for six (6) months preceding the filing of [Plaintiff's] Complaint.

Plaintiff argues the trial court erred as a matter of law by grounding its Conclusion North Carolina was not Opal's home state on a Finding Opal did not "reside" in North Carolina for six months preceding the filing of Plaintiff's Complaint.

- 10 -

Specifically, Plaintiff asserts the trial court incorrectly conflated "residency" with the statutorily required inquiry as to where Opal "lived" with her parents for the preceding six months. *Id.* § 50A-102(7). Rather, Plaintiff contends the relevant inquiry for UCCJEA purposes is simply whether the child was "physically present" with a parent in the state for the six months preceding the action.[5]

We need not decide in this case, however, whether Plaintiff's definitional argument is correct or not. This is so because the trial court was using its Findings as to residency not to define jurisdiction under the UCCJEA but to resolve the critical *factual* dispute between the parties central to the issue—when did the parties actually begin living in North Carolina. Plaintiff's contention is that the parties began living in North Carolina on 28 June 2017 and that the parties' return to New York from 9 July 2017 until 18 August 2017 was merely a "temporary absence" from North Carolina that does not count against the relevant six-month period. *See* N.C. Gen. Stat. § 50A-102(7). Conversely, Defendant contends the parties actually continued to live in New York until 18 August 2017 and that the parties' visit to North

---

[5] While North Carolina has apparently not decided this question, Plaintiff aptly cites caselaw from a number of other jurisdictions in support of his position. *See, e.g.*, *In re M.S.*, 205 Vt. 429, 436, 176 A.3d 1124, 1130 (2017) ("We join several other states in holding that it is the child's physical presence—not a parent or child's residence, domicile or subjective intent—that is relevant to determining a child's home state." (footnote and citations omitted)); *Slay v. Calhoun*, 332 Ga. Ct. App. 335, 340-41, 772 S.E.2d 425, 429-30 (2015) (concluding the language "lived" in definition of home state refers to the state where the child is physically present, not state of legal residence (citations omitted)); *In re Tieri*, 283 S.W.3d 889, 893 (Tex. Ct. App. 2008) ("In determining where a child lived for the purposes of establishing home state jurisdiction, the trial court must consider the child's physical presence in a state and decline to determine where a child lived based on the child's or the parents' intent." (citation omitted)).

Carolina from 28 June 2017 until 9 July 2017 was merely a vacation—and thus a temporary absence from New York. As such, Defendant argues the date the child began "living with" the parties in North Carolina was not until 18 August 2017 and therefore North Carolina had not attained home-state status when Opal returned to New York in January 2018 just prior to the commencement of this action.

As is evident from the trial court's unchallenged Findings, the trial court agreed with Defendant's view of the facts. The trial court was looking to "residence"—in addition to a number of other facts contained in its Findings—as part of the totality of the circumstances to determine whether the parties' visit to North Carolina beginning 28 June 2018 was a temporary absence from New York or whether the parties' return to New York from 9 July 2018 to 18 August 2018 was a temporary absence from North Carolina. *See Chick v. Chick*, 164 N.C. App. 444, 449, 596 S.E.2d 303, 308 (2004) ("adopting a totality of the circumstances approach to determine whether the absence [from a state] was merely a temporary absence" (citation omitted)). The trial court's determination the 28 June 2018 visit to North Carolina was a "vacation" and therefore the parties had not moved to North Carolina during this period is exactly the type of factual dispute best left to the trial court and one in which we cannot second guess as an appellate court. *See In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693, 700 (2019) ("But an important aspect of the trial court's role as a finder of fact is assessing the demeanor and credibility of witnesses, often in light of

inconsistencies or contradictory evidence.  It is in part because *the trial court is uniquely situated to make this credibility determination* that appellate courts may not reweigh the underlying evidence presented at trial." (emphasis added)).[6]  Because the trial court's binding Findings establish Opal did not live in North Carolina for six consecutive months prior to, or within six months prior to, the filing of Plaintiff's Complaint, the trial court properly concluded North Carolina did not have home-state jurisdiction over Opal under the UCCJEA.

## II. Inconvenient-Forum Determination

Plaintiff next argues the trial court erred by declining to exercise jurisdiction over Riley after determining North Carolina was an inconvenient forum and that New York was a more appropriate forum.  First, Plaintiff contends the trial court erred by considering a variety of factors occurring after the filing of Plaintiff's Complaint.  Second, Plaintiff asserts the trial court erred by failing to find it was in the children's best interests for North Carolina to decline jurisdiction.

*A. Standard of Review*

---

[6] Consider the following example—the Smiths have lived in North Carolina with their four-year-old child since their child's birth.  The Smiths then decide to take a one-week vacation to Hawaii.  During this vacation, the Smiths decide they would like to move permanently to Hawaii.  Upon returning to North Carolina, they begin preparing to move, and three months later, the Smiths in fact move to Hawaii.  Under Plaintiff's view, the Smiths' one-week vacation, and the subsequent three-month period they spent in North Carolina preparing to move to Hawaii, would be considered a time period that the Smiths had "lived" in Hawaii for purposes of a home-state determination, regardless of the Smiths' intent.  Such a result is contrary to how our courts have typically analyzed where a family resides under the UCCJEA.  *See Chick*, 164 N.C. App. at 449, 596 S.E.2d at 308 ("adopting a totality of the circumstances approach to determine whether the absence [from a state] was merely a temporary absence" (citation omitted)).

We review a trial court's decision to decline to exercise jurisdiction in favor of another forum for an abuse of discretion. *In re M.M.*, 230 N.C. App. 225, 228, 750 S.E.2d 50, 52-53 (2013) (citation omitted). Where the trial court "determines that the current forum is inconvenient, [it] must make sufficient findings of fact to demonstrate that it properly considered the relevant factors listed in N.C. Gen. Stat. § 50A-207(b)." *Id.* at 228-29, 750 S.E.2d at 53 (citation omitted). "We review the trial court's findings of fact to determine whether there is any evidence to support them." *Velasquez v. Ralls*, 192 N.C. App. 505, 506, 665 S.E.2d 825, 826 (2008) (citation omitted).

*B. Discussion*

Pursuant to N.C. Gen. Stat. § 50A-207(a), a North Carolina court that has jurisdiction under the UCCJEA to make a child-custody determination may "decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances, and that a court of another state is a more appropriate forum." N.C. Gen. Stat. § 50A-207(a) (2019). Before determining whether North Carolina is an inconvenient forum, the trial court must "consider whether it is appropriate for a court of another state to exercise jurisdiction." *Id.* § 50A-207(b). In making this determination, the trial court "shall allow the parties to submit information and shall consider all relevant factors," including but not limited to:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this State;

(3) The distance between the court in this State and the court in the state that would assume jurisdiction;

(4) The relevant financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

*Id.* § 50A-207(b)(1)-(8).

In its Dismissal Order, the trial court made the following Findings of Fact regarding Section 50A-207(b)'s factors:

> a.   With respect to [Section] 50A-207(b)(1), while no conclusive evidence was offered, the evidence presented supports that there may have been domestic violence by [Plaintiff] against [Defendant] and/or the minor child [Opal]. In March 2018, [Opal] began Trauma Focused Cognitive Behavioral Therapy in New York at Spence-Chapin Services to Families & Children, which continued in April and was interrupted for approximately six (6) weeks. Pursuant to a Stipulation entered May 18, 2018, and signed by the parties, their New York attorneys, and Judge Douglas E. Hoffman of the New York Supreme Court, [Opal] was

re-enrolled and is currently receiving Trauma Focused Cognitive Behavioral Therapy. Additionally, there are numerous domestic violence proceedings pending in New York.

b. With respect to [Section] 50A-207(b)(2), as of June 28, 2018, the minor children have been residing in New York for five (5) months, and [Riley] resided in North Carolina for slightly less than four (4) months, and [Opal] resided in North Carolina for five (5) months, before moving to New York on January 11, 2018. As it relates to [Riley], and as of June 28, 2018, he has spent more time in New York than he has in North Carolina during his lifetime.

c. With respect to [Section] 50A-207(b)(3) and (4), the distance between New York and North Carolina is not a slight distance, but [Plaintiff] can better bear the cost of travel between these two (2) states as his income is substantially greater than [Defendant's].

d. With respect to [Section] 50A-207(b)(5), the Court considered this factor and it does not apply to this case.

e. With respect to [Section] 50A-207(b)(6), there is greater evidence in New York than there is in North Carolina as it relates to [Opal]. There is at least one (1) full year of her being in school in New York as opposed to roughly four (4) months in North Carolina from late August to December 2017, so there are likely more teachers, school providers, and more people who have been involved in [Opal's] life that provide evidence to the court in New York rather than in North Carolina. Additionally, from a medical standpoint, there is a longer history in New York as opposed to, at best, six (6) months in North Carolina. In terms of family and friends, [Plaintiff's] parents reside in North Carolina, and [Defendant's] parents do not reside in the United States. However, there are numerous friends, coworkers, and more people to provide testimony and evidence in New York as opposed to North Carolina.

      f.      With respect to [Section] 50A-207(b)(7), New York and North Carolina have equal ability to expeditiously decide the issue of child custody.

      g.      With respect to [Section] 50A-207(b)(8), New York and North Carolina have equal familiarity with the facts and issues in the pending litigation.

Based on these Findings, the trial court determined North Carolina was an inconvenient forum and New York was a more convenient forum; therefore, the trial court relinquished jurisdiction as it related to Riley.

Plaintiff, again, does not challenge the trial court's Findings of Fact regarding its inconvenient-forum determination; accordingly, these Findings are binding on appeal. *See Koufman*, 330 N.C. at 97, 408 S.E.2d at 731 (citations omitted). Instead, Plaintiff first contends the trial court erred by considering "post-filing activities and factors" and the trial court should have instead limited its inconvenient-forum inquiry to whether North Carolina was an inconvenient forum at the time of *filing* Plaintiff's Complaint.

A review of Section 50A-207, however, belies Plaintiff's argument. First, Section 50A-207(a) provides a trial court "may decline to exercise its jurisdiction *at any time* if it determines that it is an inconvenient forum under the circumstances[.]" N.C. Gen. Stat. § 50A-207(a) (emphasis added). Where this Statute allows the trial court to decline exercising jurisdiction "at any time[,]" it necessarily follows the trial court is not limited to considering whether North Carolina is an inconvenient forum

*only* at the time of a plaintiff filing its complaint, but rather the trial court may consider whether it is an inconvenient forum "under the circumstances" as they exist *after* the filing of a complaint. *Id.* Further, in making this determination, the trial court "shall consider all relevant factors" listed in Section 50A-207(b). *Id.* § 50A-207(b). This Statute's factors, however, are not confined only to the circumstances as they existed at the filing of a plaintiff's complaint but necessarily contemplate post-filing circumstances as well, such as "[t]he relative financial circumstances of the parties[.]" *Id.* § 50A-207(b)(4). Accordingly, the trial court did not err by considering post-filing activities in its inconvenient-forum determination.

Plaintiff next argues the trial court erred in its inconvenient-forum determination because the trial court failed to find it was in the children's best interests for North Carolina to decline jurisdiction. In support of his argument, Plaintiff cites our Court's decision in *Kelly v. Kelly*, which held—"*Without a showing that the best interest of the child would be served if another state assumed jurisdiction*, North Carolina courts should not defer jurisdiction pursuant to [N.C. Gen. Stat. §] 50A-7." 77 N.C. App. 632, 635, 335 S.E.2d 780, 783 (1985) (emphasis added). We disagree.

In *Kelly*, our Court considered whether a trial court erred in its inconvenient-forum determination under the UCCJEA's statutory predecessor—the Uniform Child Custody Jurisdiction Act (UCCJA). *See id.* at 634-35, 335 S.E.2d at 782 (citation

omitted); *see also* 1979 N.C. Sess. Law 110 (N.C. 1979) (enacting the UCCJA); 1999 N.C. Sess. Law 223 (N.C. 1999) (codified at N.C. Gen. Stat. § 50A-101 *et seq.*) (repealing the UCCJA and enacting the UCCJEA). Both the UCCJA and UCCJEA contained analogous inconvenient-forum provisions that required trial courts to consider certain factors in determining whether North Carolina is an inconvenient forum. *See* 1979 N.C. Sess. Law 110, § 1 (then-codified at N.C. Gen. Stat. § 50A-7); N.C. Gen. Stat. § 50A-207.

Relevant to this appeal, the UCCJA provided: "In determining if it is an inconvenient forum, the court shall consider if it is in the *interest* of the child that another state assume jurisdiction." 1979 N.C. Sess. Law 110, § 1 (emphasis added) (then-codified at N.C. Gen. Stat. § 50A-7(c)). Under the UCCJEA, however, a trial court must "consider whether it is *appropriate* for a court of another state to exercise jurisdiction" before determining whether it is an inconvenient forum. N.C. Gen. Stat. § 50A-207(b) (emphasis added). Further, the UCCJEA did not retain any of the UCCJA's language requiring a trial court to consider the interests of the child in its inconvenient-forum analysis. *See id.* Therefore, *Kelly*'s holding that a trial court should not defer jurisdiction under the UCCJA without a showing that it would be in the best interest of the child has no application under the current UCCJEA. Accordingly, the trial court did not err by not including a finding that relinquishing jurisdiction over Riley was in the child's best interest.

Furthermore, the trial court's detailed Findings of Fact, which Plaintiff does not challenge on appeal, illustrate it considered the relevant factors under Section 50A-207 based on the evidence the parties chose to submit to the trial court, and these Findings of Fact support the trial court's ultimate Conclusion relinquishing jurisdiction over Riley because North Carolina was an inconvenient forum. *See In re M.M.*, 230 N.C. App. at 228-29, 750 S.E.2d at 52-53 (citations omitted). Therefore, the trial court did not abuse its discretion. *See id.* (citations omitted).

### III. Lack of Jurisdiction

Plaintiff lastly argues the trial court erred in its Conclusion of Law 6, which provides: "This Court lacks subject matter jurisdiction to adjudicate the issue of child custody regarding the minor children." Plaintiff contends this Conclusion is "flatly wrong" because the trial court had already determined North Carolina was Riley's home state and thus that North Carolina had subject-matter jurisdiction to adjudicate the issue of child custody. *See* N.C. Gen. Stat. § 50A-201(a)(1). Accordingly, Plaintiff asserts the trial court acted under a "misapprehension of law" and therefore "the trial court's decisions finding New York a more convenient forum and declining to grant [Plaintiff] a new trial constitute abuses of the trial court's discretion[.]"

As Defendant correctly points out, however, Plaintiff's argument "puts the cart before the horse." In its Dismissal Order, the trial court made the following Conclusions of Law:

1.  The Court has jurisdiction to adjudicate [Defendant's] Motion to Dismiss.

2.  Pursuant to [N.C. Gen. Stat. §] 50A-102, North Carolina is not [Opal's] home state for the purpose of exercising jurisdiction to make an initial custody determination pursuant to [N.C. Gen. Stat. §] 50A-102.

3.  Pursuant to [N.C. Gen. Stat. §] 50A-102(7), North Carolina is [Riley's] home state.

4.  Pursuant to [N.C. Gen. Stat. §] 50A-201(a)(1), North Carolina has jurisdiction to make an initial child custody determination regarding [Riley].

5.  However, pursuant to [N.C. Gen. Stat. §] 50A-207, North Carolina is an inconvenient forum under the circumstances regarding [Riley] and New York is a more convenient forum to exercise jurisdiction and make a child custody determination regarding [Riley].

6.  This Court lacks subject matter jurisdiction to adjudicate the issue of child custody regarding the minor children.

7.  [Defendant's] Motion to Dismiss should be granted as a matter of law.

As the trial court's Conclusions make clear, the trial court first determined it did not have subject-matter jurisdiction over Opal because North Carolina was not her home state. *See id.* Regarding Riley, the trial court then concluded it did have

jurisdiction over Riley but *declined* to exercise its jurisdiction after concluding North Carolina was an inconvenient forum. Indeed, in its Decretal Section, the trial court expressly stated, "North Carolina *relinquishes* jurisdiction over [Riley]." (emphasis added). Thus, Conclusion of Law 6 simply recognizes the trial court no longer had jurisdiction because it had already determined North Carolina did not have jurisdiction over Opal and relinquished its jurisdiction over Riley. Accordingly, the trial court did not act under a misapprehension of the law and did not err in dismissing Plaintiff's Complaint for lack of subject-matter jurisdiction.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Dismissal Order and Rule 59 Order.

AFFIRMED.

Judges DILLON and BERGER concur.