MELINDA B. CHICK, Plaintiff v. RANDY CHICK, Defendant

No. COA03-573

(Filed 1 June 2004)

**1. Child Support, Custody, and Visitation— custody—jurisdiction—home state**

The trial court did not err by declining jurisdiction over this child custody matter and by concluding that Vermont was the home state of the children, because: (1) the minor children were not living in North Carolina for the required six months prior to the commencement of plaintiff mother's custody proceedings, and except for a six-week period in January and February 2002, the minor children lived continuously in Vermont from August 2001 to July 2002; (2) the totality of circumstances shows the six-week absence was merely a temporary absence, and in light of the numerous relocations and decisions, the parties' intent at the specific time they retrieved the minor children standing alone should not control the determination of whether the absence was temporary; (3) the length of absence from Vermont was a relatively short period of time, especially when compared to the fact that the minor children had spent almost the entire previous year in Vermont; and (4) Vermont's exercise of jurisdiction is proper under both North Carolina's UCCJEA provisions and Vermont's UCCJA provisions.

**2. Child Support, Custody, and Visitation— custody—notice—substantial conformity**

The trial court did not err in a child custody case when it found that Vermont had issued its order in substantial conformity with the UCCJA and that plaintiff mother had notice and was aware of the pendency of the issue of jurisdiction before the Vermont court on 18 September 2002, because: (1) plaintiff conceded that the notice of hearing stated in all capital letters that both parties must appear and failure to appear meant it was possible for the court to issue parental rights and responsibilities based on the evidence presented by the other party; and (2) plaintiff responded to defendant's motion and specifically raised the issue of Vermont's jurisdiction over the custody issues in light of the North Carolina proceeding plaintiff had filed.

**3. Trials— recordation—conversation between courts**

The trial court did not err in a child custody case by failing to make a record of the conversation which occurred between the North Carolina court and the Vermont court as required by N.C.G.S. § 50A-110(d), because: (1) the Vermont order is a sufficient record of the communication between Vermont and North Carolina; and (2) nothing in the statute specifies which court taking part in the conversation has the affirmative duty to make the record.

**4. Child Support, Custody, and Visitation— custody—use of law enforcement**

The trial court erred by authorizing the use of law enforcement officials to effectuate a registered child custody determination made by the home state of Vermont exercising jurisdiction in substantial conformity with our UCCJEA, because: (1) the trial court remains limited, as it was under the UCCJA, to traditional contempt proceedings; (2) the circumstances allowing for the use of law enforcement officials are not present in this case; and (3) there is no statutory basis for invoking the participation of law enforcement officers in producing the children.

Appeal by plaintiff from orders entered 11 October 2002 by Judge Joyce A. Hamilton and 28 January 2003 by Judge Jennifer M. Green in Wake County District Court. Heard in the Court of Appeals 18 March 2004.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellant.*

*Oliver & Delaney, P.A., by Sean Delaney and James A. Oliver, for defendant-appellee.*

CALABRIA, Judge.

Melinda B. Chick ("mother") appeals orders entered in Wake County District Court directing law enforcement officials to assist Randy Chick ("father") in obtaining custody of their minor children and declining jurisdiction over the matter of custody of the minor children on the grounds that the State of Vermont had continuing and exclusive jurisdiction over this matter. We affirm in part and vacate in part.

On 3 September 1999, mother and father (the "parties") were married in North Carolina and are currently the natural parents of two

minor children. Due to financial hardship, mother and the minor children moved to Vermont in August of 2001 to live with father's family. Father, who was serving in the United States Marine Corps and stationed at Camp Lejeune, remained in North Carolina. In late November of 2001, father went to Vermont on leave to visit with mother and the minor children. The parties returned to North Carolina to obtain free marital counseling at Camp Lejeune. The minor children remained in Vermont until the first week in January when the parties decided to bring the minor children back to North Carolina. Six weeks later, in February of 2002, mother and the minor children returned to Vermont and resumed living with the minor children's paternal grandparents. On 26 February 2002, they were joined by father who went on terminal leave from military service.

Mother was unhappy living in Vermont and wished to return with the minor children to North Carolina where her family was located. On 1 July 2002, mother picked up the minor children from father's place of work and informed him that she may take the minor children to McDonald's before going home. Mother then returned to the parties' residence, packed her and the minor children's belongings and left Vermont with the minor children. In a note to father, she stated the following:

I am sorry it had to come to this, but I knew you would never willingly let the kids go with me. I am not trying to keep them from you. We will work out some kind of arrangement. I will call you when I get to NC. No one knows I was doing this, so my work will probably call here. Again I am very sorry. I just hope you understand.

The following day, mother filed for custody of the minor children in Wake County District Court (the "North Carolina court"). That same day, father filed for divorce and sought custody of the minor children in the Family Court of Vermont in Windsor County (the "Vermont court").

The Vermont court declined to issue a custody order on 2 July 2002 after noting the possible jurisdictional conflict between Vermont and North Carolina. However, the following day, father requested reconsideration of the court's ruling, and the Vermont court, after noting it had reserved ruling on father's motion pending receipt of further information, issued an order granting father's "request for temporary sole physical and legal rights and responsibilities of the parties' two minor children." In addition, the Vermont court expressly

asserted jurisdiction over the children. On 30 July 2002, father filed a motion to enforce the temporary custody order entered by the Vermont court on 3 July 2002. The Vermont court calendared a hearing for father's motion on 18 September 2002.

On 13 August 2002, mother filed a motion in Wake County asking the North Carolina court to determine the existence and priority of jurisdiction. In addition, mother moved to dismiss father's complaint in Vermont on the grounds that no summons was delivered when she was served on 24 July 2002, and mother argued Vermont should defer to the pending proceeding in North Carolina. On 16 September 2002, the North Carolina court issued an *ex parte* order prohibiting the removal of the minor children from Wake County until 7 October 2002, the date for the hearing on mother's motion to determine jurisdiction.

On 18 September 2002, the Vermont court heard arguments on father's motion for custody. The Vermont court awarded temporary custody to father in a written order filed 24 September 2002. On 8 October 2002, after the North Carolina court refused to extend the *ex parte* order prohibiting the removal of the minor children from North Carolina, the Vermont court entered an order to enforce custody and directed law enforcement officials to assist in the return of the minor children. On 9 and 10 October 2002, the North Carolina court heard arguments on mother's motion to determine the priority and existence of jurisdiction and, the following day, issued an order directing local law enforcement officials to assist father in obtaining custody of the minor children from mother. In a separate order, the North Carolina court also declined jurisdiction and deferred to orders entered by the Vermont court.

Mother appeals, asserting the North Carolina court erred in (I) declining jurisdiction over the custody dispute; (II) concluding mother received proper notice of the Vermont court's 18 September 2002 hearing concerning custody and jurisdiction; (III) failing to make a proper record of communications with the Vermont court concerning the jurisdictional dispute; and (IV) ordering the use of law enforcement officials to return the children to Vermont.

I. Jurisdiction

[1] Mother asserts the North Carolina court erred in declining jurisdiction over the custody matter because (1) the minor children had not met the home state requirement and (2) father admitted Vermont

CHICK v. CHICK

[164 N.C. App. 444 (2004)]

did not meet that requirement. Mother contends North Carolina, which had significant connections with the minor children, is the state which should have jurisdiction. Nonetheless, mother candidly concedes that "the Vermont court could . . . issue its [18 September custody] order . . . if Vermont had home state jurisdiction under the UCCJA, since such jurisdiction trumps all other types of jurisdiction[.]" We hold both courts correctly concluded Vermont was the home state of the children; therefore, the North Carolina court properly declined jurisdiction over the matter of custody of the minor children.

Vermont, which has not adopted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), has adopted the Uniform Child Custody Jurisdiction Act ("UCCJA"). See 15 V.S.A. §§ 1031-1051 (2004). Under both North Carolina's UCCJEA and Vermont law, jurisdictional primacy is given to the home state of a minor child. See N.C. Gen. Stat. § 50A-201 (2003); Shute v. Shute, 158 Vt. 242, 607 A.2d 890 (1992). The home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement[1] of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2003).[2] "A period of temporary absence of any of the mentioned persons is part of the period." Id. Where the child's home state is a state other than North Carolina, North Carolina may make child-custody determinations only under limited circumstances. N.C. Gen. Stat. § 50A-201.

Initially, we note there is no question that the minor children were not living in North Carolina for the required six months prior to the commencement of mother's custody proceedings; therefore, North Carolina is not the home state. It is likewise uncontested that, save for the six-week period in January and February of 2002, the minor children lived continuously in Vermont from August 2001 to July 2002. Accordingly, either Vermont is the children's home state or there is no home state. Where there is no home state, a court may look to which state has the most significant connections to the child. See N.C. Gen. Stat. § 50A-201(a)(2) (2003). Whether Vermont qualifies

---

1. Commencement is defined as "the filing of the first pleading in a proceeding." N.C. Gen. Stat. § 50A-102(5) (2003). In the instant case, the proceedings were initiated simultaneously as they were both filed 2 July 2002. Vermont's Supreme Court has held the same. See Chick v. Chick, —— Vt. ——, 844 A.2d 747 (2004).

2. The statutory definition of home state in Vermont is substantially similar to our own and also includes an exception for temporary absences. See 15 V.S.A. § 1031(5) (2004).

as the home state of the children turns on whether the minor children's six-week absence constituted a "temporary absence."[3]

As previously noted, temporary absences are considered part of the six-month period immediately preceding the commencement of a child-custody proceeding for purposes of determining a child's home state. N.C. Gen. Stat. § 50A-102(7). The North Carolina court concluded North Carolina was not the home state and Vermont was the home state of the minor children because the "children resided in Vermont for 11 months prior to filing of the complaints except for a period of temporary absence." Mother asserts the six-week period of time in North Carolina by the minor children could not legally qualify as a temporary absence since the parties' return to North Carolina was of an indefinite duration. In so doing, mother contends the parties' intent at the time of the move should determine whether the absence is a temporary absence for purposes of home state determinations.

While the issue of whether an absence from a state amounted to a temporary absence has previously come before this Court, we have decided this issue on a case-by-case basis. *See, e.g., Pheasant v. McKibben,* 100 N.C. App. 379, 384, 396 S.E.2d 333, 336 (1990). Some courts in sister states have adopted certain tests for determining whether an absence from a state was a temporary absence. These tests include (1) looking at the duration of absence, (2) examining whether the parties intended the absence to be permanent or temporary, and (3) adopting a totality of the circumstances approach to determine whether the absence was merely a temporary absence. *See S.M. v. A.S.,* 938 S.W.2d 910 (Mo. App. 1997). We deem the third option to be the most appropriate choice for several reasons. First, it comports with the approach taken by North Carolina courts in determining the issue of whether an absence was temporary on the basis

---

3. Mother asserts father conceded Vermont did not have home state jurisdiction because (1) father's 2 July 2002 filing does not expressly argue Vermont is the home state and (2) father's 3 July 2002 filing states "while i[t] may be true that Vermont does not meet the technical requirements of the definition of 'home state' . . ., it comes closer tha[n] any other state." Assuming *arguendo,* father's 3 July 2002 filing did concede Vermont did not have home state jurisdiction, the determination of whether a state meets the statutory definition of a child's home state is a legal conclusion within the province of the courts. *See Hart v. Hart,* 74 N.C. App. 1, 9-10, 327 S.E.2d 631, 637 (1985). Vermont was not bound to concede its status of home state even if father unequivocally asserted Vermont did not qualify as such. Moreover, while father's 3 July 2002 filing conceded the Vermont court *could* conclude it was not the home state, it expressly contended "that Vermont is the children's home state and therefore jurisdiction [due to its status as home state] is proper[.]"

of the facts presented in each case. Second, it incorporates consider-ations, such as the parties' intent and the length of the absence, that courts of sister states have found important in making this determi-nation. Third, it provides greater flexibility to the court making the determination by allowing for consideration of additional circum-stances that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise.

We now turn to the North Carolina court's conclusion that the six-week period of time spent by the children in North Carolina was a temporary absence from Vermont. The North Carolina court made detailed findings of fact regarding the series of trips between Vermont and North Carolina. These findings include the following:

8. In anticipation of relocating to Vermont, in early August 2001, [mother] moved with the minor children to Vermont. They resided in Vermont with [father's] mother and step-father [[father's] parents].

9. Once in Vermont, [mother] found full-time employment and the children attended daycare. When not in daycare, the children were attended to by [mother] and [father's] parents.

10. At Thanksgiving of 2001, [father] went to Vermont on leave to visit with [mother] and the children. Near the end of his leave, [father] asked [mother] to return to North Carolina with him so that they could attend marriage counseling at no cost on the military installation.

11. [The parties] returned to North Carolina in late November 2001. The minor children remained in Vermont in the care of [father's] parents.

12. Once the parties returned to North Carolina, there were changes to their long term plans. At one point, [father] had decided to reenlist, and his duty station was uncertain, but [mother] hoped it would be in North Carolina. Later, it was decided that [father] would not reenlist, but the parties would stay in North Carolina. They investigated buying a home and securing employment.

. . .

14. Later in January the parties again began discussing returning to Vermont. [Mother] wanted to stay in North Carolina and [father] wanted to return to Vermont.

15. It was subsequently decided that the parties would return to Vermont.

These findings of fact are not contested and illustrate the parties' intentions vacillated in a relatively short span of time between residing in Vermont, North Carolina, or an unknown state where father might be stationed if he reenlisted. While mother urges this Court to decide the issue of whether the six-week period was a temporary absence solely on the basis of the parties' intent at the time they retrieved the children, we decline to do so because that would ignore the fact that their intentions fluctuated. In light of the numerous relocations and decisions, the parties' intent at the specific time they retrieved the minor children, standing alone, should not control the determination of whether the absence was temporary.

Moreover, adopting mother's argument could produce absurd results. For example, if the parties retrieved the minor children with the intent to remain permanently in North Carolina only to change their minds within a couple of days, mother's test would vitiate Vermont's status as home state. That would be true even if the parties had debated the issue and changed their minds regarding their intentions multiple times, so long as their intent at the precise time of leaving Vermont was to remain in North Carolina. A trial court's determination of whether an absence was temporary should not be solely decided on whimsy or caprice.

In addition, we note the length of absence from Vermont was a relatively short period of time, especially when compared to the fact that the minor children had spent almost the entire previous year in Vermont. While mother states it would "strain logic . . . to call the children's . . . residence in North Carolina a 'temporary absence,' " we note this Court has held ten months outside of North Carolina over a two-year period constituted a temporary absence when it was pursuant to a temporary custody order issued by a Georgia court. *Pheasant v. McKibben*, 100 N.C. App. 379, 396 S.E.2d 333 (1990). In addition, as the North Carolina court noted, a finding of temporary absence is bolstered by this Court's opinion in *Plemmons v. Stiles*, 65 N.C. App. 341, 309 S.E.2d 504 (1983). In *Plemmons*, this Court determined North Carolina was the child's home state when "the minor child resided with the plaintiffs for an almost continuous 15 month period immediately preceding the commencement . . . ." *Id.*, 65 N.C. App. at 344, 309 S.E.2d at 506. We further noted "[t]he child's brief visit to Texas [of three and one-half weeks] during this time period

was not sufficient to prevent such a conclusion." *Id.*[4] We likewise conclude that the minor children's brief period of absence from North Carolina of six weeks during the eleven months they lived in Vermont was not sufficient to prevent the conclusion that Vermont was the home state.

In summary, applying the UCCJEA of this State to these facts, North Carolina in no way can qualify as the home state of the minor children. Additionally, under the same definition Vermont did qualify as the home state of the minor children prior to the bringing of this action. Vermont also qualifies as the minor children's home state under its UCCJA. Not only has Vermont not declined to exercise jurisdiction but to the contrary has firmly exercised jurisdiction over these children. There can be no doubt this exercise of jurisdiction is proper under both North Carolina's UCCJEA provisions and Vermont's UCCJA provisions. Since the provisions of North Carolina's UCCJEA allow for North Carolina, under these facts, to assume significant connection jurisdiction only if there exists no home state and since we have determined Vermont was, in fact, the home state of the minor children, this assignment of error is overruled.

## II. Notice

[2] Mother asserts, in the alternative, that even if Vermont was the home state and could conduct the 18 September hearing, "it had not provided the Mother with proper notice of that hearing." Mother argues the only pending motion at the time of 18 September 2002 was father's motion to use law enforcement to enforce the earlier 3 July 2002 order by the Vermont court. Accordingly, mother contends no motion was filed or served concerning issues of jurisdiction over the child-custody determination, and she "had no indication the Vermont court would be issuing any rulings on jurisdiction." Because Vermont

---

4. Mother argues that *Plemmons* is distinguishable due to (1) the shorter period of absence from the home state, (2) the records and briefs for that case reveal bad faith conduct on the part of the non-custodial parents removing the children from North Carolina, and (3) the parties did not assign error to the issue of whether the period of absence from the home state was a temporary absence. We disagree. The difference in the periods of absence is not significant enough to distinguish *Plemmons* on that ground alone. Moreover, assuming bad faith conduct did exist, this Court neither mentioned it nor relied on it in determining the absence did not vitiate the required six-month period required for North Carolina to be the home state. Finally, if the period of absence did interrupt the six-month period required for North Carolina to be the home state, it would have jurisdictional implications on our authority to decide the issue of custody, and, in the absence of an assignment of error, this Court would address the issue *sua sponte*.

failed to adhere to the notice requirements of its UCCJA provisions, mother asserts, the North Carolina court erred when it "found that Vermont had issued its order in substantial conformity with the UCCJA." This argument fails.

Mother conceded the notice of hearing regarding the 18 September 2002 hearing states in all capital letters as follows: "Both parties must appear. If you fail to appear, it is possible that the court will issue parental rights and responsibilities orders based on the evidence presented by the other party/ies." Moreover, mother responded to father's motion (for which arguments were heard on 18 September 2002) and specifically raised the issue of Vermont's jurisdiction over the custody issues in light of the North Carolina proceeding she had filed. Mother "respectfully request[ed] [the Vermont] court to stay any enforcement of determination as to its jurisdiction and to consult with the appropriate judge presiding over the October 7, 2002 civil session of the Wake County District Court with respect to a determination of jurisdiction in this matter." In light of these facts, it is difficult to entertain mother's arguments that she did not receive notice or was unaware of the pendency of the issue of jurisdiction before the Vermont court on 18 September 2002 at the time of the hearing. This assignment of error is overruled.

III. Record of Communication

[3] Mother asserts the North Carolina court erred by failing to make a record of the conversation which occurred between the North Carolina court and the Vermont court as required by N.C. Gen. Stat. § 50A-110(d) (2003). Mother contends that this failure deprived her of the "protections to litigants under [the UCCJA and UCCJEA] that allow those parties to respond to issues and 'facts' shared between judges in an effort to fully and fairly inform a tribunal of a party's respective position in litigation and correct misassumptions that may be communicated between the courts."

North Carolina General Statutes § 50A-110 (2003) provides, in pertinent part, as follows:

(a) A court of this State may communicate with a court in another state concerning a proceeding arising under [the UCCJEA].

(b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the commu-

nication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

(c) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.

(d) Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.

These statutory provisions "emphasize the role of judicial communications" and "require that a record be made of the conversation and that the parties have access to that record in order to be informed of the content of the conversation." Official Commentary, N.C. Gen. Stat. § 50A-110. Relevant to the disposition of the issue in this case, a "record includes . . . a memorandum . . . made by a court after the communication." *Id.*

In the instant case, mother requested the Vermont court "consult with the appropriate judge presiding over the October 7, 2002 civil session of the Wake County District Court with respect to a determination of jurisdiction in this matter." The Vermont court, in its order, noted it had contacted the North Carolina court and the conversation disclosed that the facts alleged by the parties in their respective cases were "substantially similar." The order of the Vermont court also noted the conversation covered certain aspects of the procedural history of the proceeding in North Carolina.

We hold the Vermont order is a sufficient record of the communication between Vermont and North Carolina. First, the factual issues covered in the conversation were those alleged by and known to mother. Indeed, it appears that her version of the events leading up to the proceedings were considered and adopted as comporting with the facts as alleged by father. Mother does not contest the validity of the procedural history as set out in the Vermont order concerning the North Carolina proceeding. Second, even if the statute required more than the summary of the conversation as included in the Vermont order, the record before this Court indicates that a transcript was made by the court in Vermont, and nothing in the statute or official commentary specifies which court taking part in the conversation has the affirmative duty to make the record. On the contrary, it is sufficient if either court makes a record and that record is made avail-

able. Finally, the North Carolina court stated it was "basing [its] order . . . not necessarily on . . . any conversation with the [Vermont] judge, but *on a review of the Vermont order and the findings of fact contained therein.*" In light of the North Carolina court's express declaration that the communication between the courts was not a factor in deciding the jurisdictional issue, we fail to see how mother was deprived of "an opportunity to fairly and fully present facts and arguments on the jurisdictional issue before [the] determination [was] made." Official Commentary, N.C. Gen. Stat. § 50A-110.

We make one final observation regarding the record of the communication made in this case: when making a record as contemplated by N.C. Gen. Stat. § 50A-110, the better practice is to include in the record greater detail than the minimum level strictly required by the statute. Generous disclosure regarding a communication between courts better enables the parties to properly prepare for and respond to the issues raised and discussed in the communication.

IV. Use of Law Enforcement Officials

[4] Mother asserts the North Carolina court erred in authorizing the use of law enforcement officials to assist father in obtaining custody of the minor children. Mother's first argument relates to the fact that the Vermont 8 October 2002 order concerning use of law enforcement officials was issued two weeks before mother was noticed for a hearing on 24 October 2002. Nevertheless, mother was properly noticed on 26 August 2002 concerning the 18 September 2002 hearing for plaintiff's motion to enforce the custody order. Moreover, the North Carolina court's order of enforcement was based upon the 24 September 2002 order and not the 8 October 2002 order by the Vermont Court.[5]

. Mother's second argument relates to her assertion that "the record does not reflect any compliance by the Father with . . . [N.C. Gen. Stat. § 50A-305] . . . requiring notice to the Mother . . . twenty

---

5. Indeed, at the hearing, the North Carolina court stated as follows with regards to its enforcement order:

[The 24 September custody order issued by Vermont] found as a finding, and after application of Vermont law, that Vermont is the home state of the minor child—minor children. I do, in fact, find that Vermont is the home state of the minor children. That that order dated September 24, based on the hearing September 18, was entered substantially in compliance with the UCCJA and the UCCJEA. That order is enforceable, upon proper registration by this Court . . . [and] I will authorize use of law enforcement to enforce that order if, in fact, the children are not returned to his custody pursuant to that order.

days . . . before registration is effective[.]" North Carolina General Statutes § 50A-305 provides for the manner in which a party registers in this State a child-custody determination issued by a court of another state. To register such a child-custody determination in this State, the party seeking registration must provide the following materials to the appropriate court:

(1) A letter or other document requesting registration;

(2) Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and

(3) Except as otherwise provided in G.S. 50A-209, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child-custody determination sought to be registered.

N.C. Gen. Stat. § 50A-305(a). Once the registering court receives these documents, the court (1) files the child-custody determination as a foreign judgment with the accompanying documents and information and (2) directs the party seeking registration to serve notice to certain, specified individuals. N.C. Gen. Stat. § 50A-305(b) (2003). This notice must state that the registered determination, as of its date of registration, is enforceable in the same manner as a North Carolina child-custody determination. N.C. Gen. Stat. § 50A-305(c)(1) (2003). Once the required notice is served, a twenty-day period begins, during which the following, limited challenges to the registration are available:

(1) The issuing court did not have jurisdiction under Part 2;

(2) The child-custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under Part 2; or

(3) The person contesting registration was entitled to notice, but notice was not given in accordance with the standards of G.S. 50A-108 in the proceedings before the court that issued the order for which registration is sought.

N.C. Gen. Stat. § 50A-305(d) (2003). At the earlier of the passing of the twenty-day window or a hearing in which the North Carolina court rejects the limited grounds upon which a party may oppose registration, the registered order is confirmed. N.C. Gen. Stat. § 50A-305(e)

CHICK v. CHICK

[164 N.C. App. 444 (2004)]

(2003). Thereafter, the party opposing the registered order may only challenge the order by showing it has been vacated, stayed, or modified by a court properly exercising jurisdiction. N.C. Gen. Stat. § 50A-308(d)(2) (2003).

Thus, contrary to mother's contention, nothing in the statute requires that the party seeking registration wait twenty days before registration is effective. Rather, the twenty-day period provides the time frame during which a party may oppose registration on the grounds provided for in the statute or be limited to the sole ground provided in N.C. Gen. Stat. § 50A-308(d)(2).[6]

While it appears likely that mother did not receive notice technically complying with the provisions of N.C. Gen. Stat. § 50A-305 prior to the hearing, it is clear that mother received actual notice of the proceedings and was present when the North Carolina court held a hearing on both "[mother's] motion for North Carolina to assume jurisdiction, [and father's] motion . . . to enforce the Vermont order." At that hearing, mother made no objection or argument predicated on a lack of notice with respect to father's motion to enforce. This is true despite the fact that father specifically stated "we waive any objection to any notice or anything like that on the hearing. *So if they do the same, so we don't have to deal with that later.*" Thereafter, mother proceeded with the hearing both on her motion regarding priority and existence of North Carolina's jurisdiction as well as father's motion to enforce the child-custody determination by the Vermont court.

Moreover, the North Carolina court received evidence of and considered the grounds upon which mother could challenge the registration of the Vermont child-custody determination and rejected them. As the North Carolina court held at the hearing and we have approved of on appeal, Vermont had jurisdiction over the child-custody determination. Likewise, mother received the notice comporting with both our UCCJEA provisions and Vermont's UCCJA provisions regarding the 18 September 2002 hearing and 24 September 2002 order. Nothing in the record indicates the Vermont order has been stayed, modified, or vacated. In short, the Vermont order was registered, mother was afforded a chance to challenge the validity of that order on the bases

6. North Carolina General Statutes § 50A-308(d)(2) references N.C. Gen. Stat. § 50A-304. We take judicial notice that the process by which the order is registered is found in N.C. Gen. Stat. § 50A-305, and the reference to N.C. Gen. Stat. § 50A-304 appears to be a typographical error.

provided for under our UCCJEA, and those challenges failed. We hold the North Carolina court appropriately determined the 24 September 2002 order should be enforced.

Mother also contends that neither Vermont's UCCJA provisions nor our UCCJEA provisions allow for the North Carolina court's use of law enforcement officers to effectuate the return of the children to father. First, even if Vermont did not have the authority to issue enforcement orders under its UCCJA, the North Carolina court would still be entitled to enforce a registered child-custody determination by any means provided for under the UCCJEA. N.C. Gen. Stat. § 50A-306 (2003). Nothing in our statutes indicates our courts must wait for an "enabling" order from another court that properly directs the use of law enforcement. Thus, our review concerns whether the North Carolina court erred in authorizing the use of law enforcement to effectuate a registered child-custody determination made by a home state exercising jurisdiction in substantial conformity with our UCCJEA.

In a previous ruling by this Court, we vacated a trial court's order invoking the use of law enforcement to effectuate the custody determination made by a home state on the grounds that it exceeded its authority under North Carolina's UCCJA. *In re Bhatti*, 98 N.C. App. 493, 391 S.E.2d 201 (1990). "The UCCJEA anticipates a greater enforcement role for law enforcement officers than did the UCCJA." 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.142(e) (5th rev. ed. 2002). Provisions in the UCCJEA clearly approve of the use of law enforcement officials under certain circumstances. *See, e.g.*, N.C. Gen. Stat. §§ 50A-311, -315, and -316. In the absence of those circumstances, however, the trial court remains limited, as it was under the UCCJA, to traditional contempt proceedings. *Bhatti*, 98 N.C. App. at 497-98, 391 S.E.2d at 204. Because the circumstances allowing for the use of law enforcement officials are not present in this case[7] and because we remain "unaware of any statutory basis for

---

7. Father asserts the UCCJEA does provide for the use of law enforcement officials under N.C. Gen. Stat. §§ 50A-315 and -316. This could be true only if "prosecutor or other appropriate public official" as used in those provisions could be interpreted as including the trial court. Our research reveals that states which have adopted the UCCJEA have frequently omitted these provisions or specified these provisions apply to prosecutors, district attorneys, county prosecuting attorneys, or attorneys general. *See* Unif. Child Custody Jurisdiction & Enforcement Act § 315, 9 U.L.A. 99-100 (Supp. 2004). Moreover, if "other appropriate public official" included the court, N.C. Gen. Stat. § 50A-315(b) could be read as saying "A . . . [court] acting under this section acts on behalf of the court and may not represent any party." We decline to adopt father's proposed reading of these provisions.

invoking the participation of law enforcement officers in producing the children[,]" we vacate the portion of the North Carolina court's order authorizing the use of law enforcement officials.

Affirmed in part, vacated in part.

Judges McGEE and STEELMAN concur.