IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-869

 Filed: 1 September 2020

Mecklenburg County, No. 18 CVD 984

FLORIAN HALILI, Plaintiff

 v.

DENADA RAMNISHTA, Defendant

 Appeal by Plaintiff from Orders entered 9 August 2018 and 28 November 2018

by Judge Gary L. Henderson in Mecklenburg County District Court. Heard in the

Court of Appeals 29 April 2020.

 Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-
 appellant.

 Jonathan McGirt for defendant-appellee.

 HAMPSON, Judge.

 Factual and Procedural Background

 Florian Halili (Plaintiff) appeals from (1) an Order granting a Motion to

Dismiss (Dismissal Order) filed by Denada Ramnishta (Defendant) on the basis the

trial court did not have subject-matter jurisdiction over this child-custody action

under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA)1 and

(2) an Order denying Plaintiff’s Motion for a New Trial brought under Rule 59 of the

 1 As codified in North Carolina at N.C. Gen. Stat. § 50A-101 et seq. (2019).
 HALILI V. RAMNISHTA

 Opinion of the Court

North Carolina Rules of Civil Procedure (Rule 59 Order). At the heart of this case

are the trial court’s Conclusions in the Dismissal Order that (1) North Carolina was

not the “home state” of the parties’ oldest child, Opal,2 and (2) although North

Carolina was the “home state” of the parties’ youngest child, Riley, North Carolina

was an inconvenient forum for this litigation. The Record before us tends to show the

following:

 On 19 January 2018, Plaintiff, at the time acting pro se, filed a Complaint in

Mecklenburg County District Court, seeking temporary and permanent custody of

the minor children.3 On 2 March 2018, Defendant filed her Motion to Dismiss in the

current action, requesting the trial court dismiss Plaintiff’s Complaint for lack of

subject-matter jurisdiction. Defendant’s Motion to Dismiss asserted the trial court

lacked subject-matter jurisdiction under the UCCJEA because the state of New York

was Opal’s home state and North Carolina was an inconvenient forum in which to

determine the issue of child custody for Riley.

 The trial court held a hearing on Defendant’s Motion to Dismiss on 28 June

2018, at which both parties presented evidence and arguments to the trial court. On

9 August 2018, the trial court entered its Dismissal Order.

 2 In briefing, the parties refer to the children by their initials. We apply pseudonyms for the
minor children for ease of reading.
 3 Included in Plaintiff’s prayer for relief in this custody action was a concomitant request for

the trial court to set child support.

 -2-
 HALILI V. RAMNISHTA

 Opinion of the Court

 In the Dismissal Order, the trial court made Findings of Fact that Plaintiff

does not challenge on appeal. These Findings of Fact are thus binding on appeal. See

Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (holding

unchallenged findings of fact are presumed to be supported by competent evidence

and are binding on appeal (citations omitted)). Therefore, these Findings form the

operative facts of this case, including:

 1. [Plaintiff] currently resides in Mecklenburg County,
 North Carolina, and [Defendant] currently resides in New York
 County, New York.

 2. The parties were married to each other in August of
 2007 in New York, and permanently physically separated on
 January 11, 2018.

 3. There are two (2) children of the parties’ marriage,
 namely, [Opal] . . . and [Riley] . . . .

 4. [Opal] was born in New York State and [Riley] was born
 in Charlotte, North Carolina.

 5. From July 11, 2011, and until August 17, 2017, the
 parties and [Opal] resided in New York County, New York. On
 August 17, 2017, the parties and [Opal] left New York and began
 residing in Charlotte, North Carolina on August 18, 2017. On
 January 11, 2018, [Defendant] and the minor children left
 Charlotte, North Carolina, and returned to their home in New
 York, New York.

 6. It is undisputed the parties had the intent to
 permanently relocate from New York to North Carolina and that
 move would be for a period of time longer than one (1) year.
 [Defendant] intended at one point in time that the move to North
 Carolina would be approximately two (2) to three (3) years.

 -3-
 HALILI V. RAMNISHTA

 Opinion of the Court

[Plaintiff] intended at one point in time that the move to North
Carolina would be approximately five (5) years.

 7. As evidence of intent to move from New York to North
Carolina, the parties listed their New York coop apartment for
sale in June 2017. However, any sale would not occur earlier than
three (3) months later due to the building application and
approval process for the coop.

 8. As evidence of intent to move from New York to North
Carolina, in April 2017, the parties purchased a home in
Charlotte, North Carolina, in addition to the existing
condominium they own in Charlotte. The parties executed loan
documents for this new home indicating that they would occupy
the home within sixty (60) days following the purchase. However,
the parties did not occupy the home within this time period.

 9. As evidence of intent to move from New York to North
Carolina, [Defendant] searched for, and accepted, a job offer on
April 1, 2017 in Charlotte, but the record is clear that the parties
did not move to Charlotte at this time.

 10. As evidence of intent to move from New York to North
Carolina, in January 2017, [Defendant] applied for a school in
Charlotte for [Opal] to attend beginning August 2017.

 11. The parties moved to North Carolina from New York,
with the intent to move, on August 17, 2017. This date is
supported by many facts, including:

 a. The parties’ actions to make the New York
 apartment unhabitable by returning the cable television box
 on August 17, 2017, and forwarding the New York mail to
 Charlotte on September 1, 2017.

 b. Text communications from [Defendant] to an
 individual on August 21, 2017, indicating she moved to
 Charlotte, North Carolina, the preceding weekend.

 -4-
 HALILI V. RAMNISHTA

 Opinion of the Court

 c. The parties and [Opal] ([Riley] having not yet
 been born) packing up their New York registered car with
 items necessary to live in North Carolina and driving to
 Charlotte and arriving on August 18, 2017. These items
 included [Plaintiff’s] wine collection and the parties’ safe that
 contained numerous important documents.

 d. Numerous pictures of [Opal] in the New York
 apartment on August 17, 2017, saying goodbye to the New
 York home.

 e. The Charlotte home was professionally cleaned
 immediately prior to the parties and [Opal] arriving in
 Charlotte on August 18, 2017. Additionally, a washer and
 dryer had been installed and available for use in the Charlotte
 home prior to the family[’s] arrival.

 12. The parties and [Opal] ([Riley] having not yet been
born), visited Charlotte, North Carolina for a vacation from June
28, 2017 until July 9, 2017, when they flew via airplane roundtrip
from New York. During this vacation, the parties stayed in a
hotel for the first three (3) nights of their trip and then stayed for
the remainder at their unfurnished home in Charlotte. The hotel
had Internet access for [Defendant] to work and a pool for [Opal]
to swim, which was part of the reason for choosing this hotel. The
decision to vacate the hotel was made by [Plaintiff] and not
[Defendant], who was approximately six (6) month’s pregnant at
the time. [Defendant’s] testimony was more credible as to why
the parties and the minor children spent the remainder of this
visit at their unfurnished home. The Charlotte home was not
habitable at this time. This home was dirty from construction,
did not have necessary living items, including, but not limited to,
utensils, furniture, washer and dryer, cable or Internet service.

 13. During the visit to Charlotte, North Carolina from June
28, 2017 until July 9, 2017, [Defendant] met with potential
doctors to assist in the delivery of [Riley] in September 2017. On
June 29, 2017, [Defendant] sent a text message to a friend stating
that, “. . . We are in clt till 7/8. I am working out of here so I can
meet with some doctors and visit the two hospitals.”

 -5-
 HALILI V. RAMNISHTA

 Opinion of the Court

 14. [Opal] resided in North Carolina from August 18, 2017
 until January 11, 2018. [Opal] did not reside in North Carolina
 for six (6) months preceding the filing of [Plaintiff’s] Complaint.

 15. Between January 8th, 2018 and January 19th, 2018, the
 parties were in substantial marital conflict such that [Defendant]
 chose to move back to their New York apartment with the minor
 children on January 11th, 2018. The subject and actions of the
 parties during this marital conflict is before the New York County
 Family Court for permanent adjudication[.]

 ....

 21. There is also a pending New York Supreme Court
 action, filed by [Defendant] . . . for the following relief: absolute
 divorce, child custody, child support, maintenance, an equitable
 distribution of marital property . . . and related relief.

 In its Dismissal Order, the trial court concluded it lacked subject-matter

jurisdiction under the UCCJEA to make an initial custody decision regarding Opal

because North Carolina was not Opal’s home state. The trial court concluded North

Carolina was Riley’s home state, but North Carolina was an inconvenient forum and

New York was a more convenient forum, thereby relinquishing its jurisdiction over

Riley. Having made these Conclusions, the trial court finally concluded it “lacks

subject matter jurisdiction to adjudicate the issue of child custody regarding the

minor children.”

 On 20 August 2018, Plaintiff filed a Motion for a New Trial requesting the trial

court grant Plaintiff a new trial. The trial court held a hearing on Plaintiff’s Rule 59

Motion on 22 October 2018. On 28 November 2018, the trial court entered its Rule

 -6-
 HALILI V. RAMNISHTA

 Opinion of the Court

59 Order denying Plaintiff’s Motion for a New Trial. Plaintiff filed Notice of Appeal

from both the Dismissal Order and Rule 59 Order on 2 January 2019.

 Appellate Jurisdiction

 Before addressing subject-matter jurisdiction under the UCCJEA, we must

resolve an issue of appellate jurisdiction. Defendant has filed a Motion to Dismiss

Appeal and Motion for Appellate Sanctions contending Plaintiff’s Notice of Appeal

was untimely filed five days late—thereby depriving this Court of jurisdiction over

the appeal under N.C.R. App. P. 3(c)(1). Plaintiff counters Defendant’s delayed

and/or defective service of the trial court’s Rule 59 Order tolled the time for filing

Notice of Appeal and, as such, his appeal was timely noticed.4

 We acknowledge the parties appear to have spared no effort in their vigorous

litigation (and re-litigation) of this issue both in the trial court and in this Court (both

in motions and in briefs). We, however, decline to wade into the factual and

credibility determinations necessary to conclusively vindicate either party on this

particular procedural dispute. Rather, Plaintiff has also filed a Petition for Writ of

Certiorari with our Court, seeking review of the trial court’s Orders in the event we

conclude Plaintiff’s Notice of Appeal was untimely. Presuming arguendo Plaintiff’s

Notice of Appeal was untimely having been filed more than thirty days after entry of

 4 On 6 January 2020, Plaintiff filed with this Court a Motion to Tax Costs and Have Other
Penalties Imposed Against Appellee (Motion to Tax Costs). Both parties’ Motions seek to impose either
sanctions or tax costs against the other party. In our discretion, we deny both Plaintiff’s Motion to
Tax Costs and Defendant’s Motion for Appellate Sanctions. See N.C.R. App. P. 25(b); 34(b).

 -7-
 HALILI V. RAMNISHTA

 Opinion of the Court

the trial court’s Rule 59 Order, in our discretion, we grant Plaintiff’s Petition for Writ

of Certiorari. N.C.R. App. P. 21(a)(1); see also Anderson v. Hollifield, 345 N.C. 480,

482, 480 S.E.2d 661, 663 (1997) (“Rule 21(a)(1) gives an appellate court the authority

to review the merits of an appeal by certiorari even if the party has failed to file notice

of appeal in a timely manner.”). Because we grant Plaintiff’s Petition for Writ of

Certiorari, we dismiss as moot Defendant’s Motion to Dismiss Appeal.

 Issues

 The dispositive issues in this case are whether (I) the trial court erred by

concluding North Carolina was not Opal’s home state under the UCCJEA; (II) the

trial court erred by declining to exercise jurisdiction over Riley after concluding North

Carolina was an inconvenient forum; and (III) the trial court acted under a

misapprehension of the law in concluding it lacked subject-matter jurisdiction to

adjudicate the issue of child custody regarding the minor children.

 Analysis

 I. Home-State Determination

 Plaintiff first contends the trial court erred by concluding it lacked subject-

matter jurisdiction over Opal pursuant to the UCCJEA on the basis North Carolina

was not Opal’s home state.

 A. Standard of Review

 -8-
 HALILI V. RAMNISHTA

 Opinion of the Court

 As noted above, Plaintiff does not challenge the trial court’s Findings of Fact,

rather narrowing his focus on the question of whether those Findings support the

trial court’s Conclusion it had no jurisdiction under the UCCJEA as it related to Opal.

“Whether the trial court has jurisdiction under the UCCJEA is a question of law[.]”

In re J.H., 244 N.C. App. 255, 260, 780 S.E.2d 228, 233 (2015) (citation omitted).

Accordingly, we review the trial court’s conclusions de novo. See Gerhauser v. Van

Bourgondien, 238 N.C. App. 275, 281, 767 S.E.2d 378, 383 (2014) (citations omitted).

 B. Discussion

 A North Carolina court has jurisdiction to make an initial child-custody

determination under the UCCJEA if North Carolina was

 the home state of the child on the date of the commencement of
 the proceeding, or was the home state of the child within six
 months before the commencement of the proceeding, and the child
 is absent from this State but a parent or person acting as a parent
 continues to live in this State[.]

N.C. Gen. Stat. § 50A-201(a)(1) (2019) (emphasis added). A child’s “home state” is

 the state in which a child lived with a parent or a person acting
 as a parent for at least six consecutive months immediately before
 the commencement of a child-custody proceeding. In the case of
 a child less than six months of age, the term means the state in
 which the child lived from birth with any of the persons
 mentioned. A period of temporary absence of any of the
 mentioned persons is part of the period.

Id. § 50A-102(7) (2019). Section 50A-102(5) defines “commencement” for UCCJEA

purposes as “the filing of the first pleading in a proceeding.” Id. § 50A-102(5).

 -9-
 HALILI V. RAMNISHTA

 Opinion of the Court

 Here, the trial court found:

 5. From July 11, 2011, and until August 17, 2017, the
 parties and [Opal] resided in New York County, New York. On
 August 17, 2017, the parties and [Opal] left New York and began
 residing in Charlotte, North Carolina on August 18, 2017. On
 January 11, 2018, [Defendant] and the minor children left
 Charlotte, North Carolina, and returned to their home in New
 York, New York.

 ....

 12. The parties and [Opal] ([Riley] having not yet been
 born), visited Charlotte, North Carolina for a vacation from June
 28, 2017 until July 9, 2017, when they flew via airplane roundtrip
 from New York. During this vacation, the parties stayed in a
 hotel for the first three (3) nights of their trip and then stayed for
 the remainder at their unfurnished home in Charlotte. The hotel
 had Internet access for [Defendant] to work and a pool for [Opal]
 to swim, which was part of the reason for choosing this hotel. The
 decision to vacate the hotel was made by [Plaintiff] and not
 [Defendant], who was approximately six (6) month’s pregnant at
 the time. [Defendant’s] testimony was more credible as to why
 the parties and the minor children spent the remainder of this
 visit at their unfurnished home. The Charlotte home was not
 habitable at this time. This home was dirty from construction,
 did not have necessary living items, including, but not limited to,
 utensils, furniture, washer and dryer, cable or Internet service.

 ....

 14. [Opal] resided in North Carolina from August 18, 2017
 until January 11, 2018. [Opal] did not reside in North Carolina
 for six (6) months preceding the filing of [Plaintiff’s] Complaint.

 Plaintiff argues the trial court erred as a matter of law by grounding its

Conclusion North Carolina was not Opal’s home state on a Finding Opal did not

“reside” in North Carolina for six months preceding the filing of Plaintiff’s Complaint.

 - 10 -
 HALILI V. RAMNISHTA

 Opinion of the Court

Specifically, Plaintiff asserts the trial court incorrectly conflated “residency” with the

statutorily required inquiry as to where Opal “lived” with her parents for the

preceding six months. Id. § 50A-102(7). Rather, Plaintiff contends the relevant

inquiry for UCCJEA purposes is simply whether the child was “physically present”

with a parent in the state for the six months preceding the action.5

 We need not decide in this case, however, whether Plaintiff’s definitional

argument is correct or not. This is so because the trial court was using its Findings

as to residency not to define jurisdiction under the UCCJEA but to resolve the critical

factual dispute between the parties central to the issue—when did the parties

actually begin living in North Carolina. Plaintiff’s contention is that the parties

began living in North Carolina on 28 June 2017 and that the parties’ return to New

York from 9 July 2017 until 18 August 2017 was merely a “temporary absence” from

North Carolina that does not count against the relevant six-month period. See N.C.

Gen. Stat. § 50A-102(7). Conversely, Defendant contends the parties actually

continued to live in New York until 18 August 2017 and that the parties’ visit to North

 5 While North Carolina has apparently not decided this question, Plaintiff aptly cites caselaw
from a number of other jurisdictions in support of his position. See, e.g., In re M.S., 205 Vt. 429, 436,
176 A.3d 1124, 1130 (2017) (“We join several other states in holding that it is the child’s physical
presence—not a parent or child’s residence, domicile or subjective intent—that is relevant to
determining a child’s home state.” (footnote and citations omitted)); Slay v. Calhoun, 332 Ga. Ct. App.
335, 340-41, 772 S.E.2d 425, 429-30 (2015) (concluding the language “lived” in definition of home state
refers to the state where the child is physically present, not state of legal residence (citations omitted));
In re Tieri, 283 S.W.3d 889, 893 (Tex. Ct. App. 2008) (“In determining where a child lived for the
purposes of establishing home state jurisdiction, the trial court must consider the child’s physical
presence in a state and decline to determine where a child lived based on the child’s or the parents’
intent.” (citation omitted)).

 - 11 -
 HALILI V. RAMNISHTA

 Opinion of the Court

Carolina from 28 June 2017 until 9 July 2017 was merely a vacation—and thus a

temporary absence from New York. As such, Defendant argues the date the child

began “living with” the parties in North Carolina was not until 18 August 2017 and

therefore North Carolina had not attained home-state status when Opal returned to

New York in January 2018 just prior to the commencement of this action.

 As is evident from the trial court’s unchallenged Findings, the trial court

agreed with Defendant’s view of the facts. The trial court was looking to “residence”—

in addition to a number of other facts contained in its Findings—as part of the totality

of the circumstances to determine whether the parties’ visit to North Carolina

beginning 28 June 2018 was a temporary absence from New York or whether the

parties’ return to New York from 9 July 2018 to 18 August 2018 was a temporary

absence from North Carolina. See Chick v. Chick, 164 N.C. App. 444, 449, 596 S.E.2d

303, 308 (2004) (“adopting a totality of the circumstances approach to determine

whether the absence [from a state] was merely a temporary absence” (citation

omitted)). The trial court’s determination the 28 June 2018 visit to North Carolina

was a “vacation” and therefore the parties had not moved to North Carolina during

this period is exactly the type of factual dispute best left to the trial court and one in

which we cannot second guess as an appellate court. See In re J.A.M., 372 N.C. 1, 11,

822 S.E.2d 693, 700 (2019) (“But an important aspect of the trial court’s role as a

finder of fact is assessing the demeanor and credibility of witnesses, often in light of

 - 12 -
 HALILI V. RAMNISHTA

 Opinion of the Court

inconsistencies or contradictory evidence. It is in part because the trial court is

uniquely situated to make this credibility determination that appellate courts may not

reweigh the underlying evidence presented at trial.” (emphasis added)). 6 Because the

trial court’s binding Findings establish Opal did not live in North Carolina for six

consecutive months prior to, or within six months prior to, the filing of Plaintiff’s

Complaint, the trial court properly concluded North Carolina did not have home-state

jurisdiction over Opal under the UCCJEA.

 II. Inconvenient-Forum Determination

 Plaintiff next argues the trial court erred by declining to exercise jurisdiction

over Riley after determining North Carolina was an inconvenient forum and that

New York was a more appropriate forum. First, Plaintiff contends the trial court

erred by considering a variety of factors occurring after the filing of Plaintiff’s

Complaint. Second, Plaintiff asserts the trial court erred by failing to find it was in

the children’s best interests for North Carolina to decline jurisdiction.

 A. Standard of Review

 6 Consider the following example—the Smiths have lived in North Carolina with their four-
year-old child since their child’s birth. The Smiths then decide to take a one-week vacation to Hawaii.
During this vacation, the Smiths decide they would like to move permanently to Hawaii. Upon
returning to North Carolina, they begin preparing to move, and three months later, the Smiths in fact
move to Hawaii. Under Plaintiff’s view, the Smiths’ one-week vacation, and the subsequent three-
month period they spent in North Carolina preparing to move to Hawaii, would be considered a time
period that the Smiths had “lived” in Hawaii for purposes of a home-state determination, regardless
of the Smiths’ intent. Such a result is contrary to how our courts have typically analyzed where a
family resides under the UCCJEA. See Chick, 164 N.C. App. at 449, 596 S.E.2d at 308 (“adopting a
totality of the circumstances approach to determine whether the absence [from a state] was merely a
temporary absence” (citation omitted)).

 - 13 -
 HALILI V. RAMNISHTA

 Opinion of the Court

 We review a trial court’s decision to decline to exercise jurisdiction in favor of

another forum for an abuse of discretion. In re M.M., 230 N.C. App. 225, 228, 750

S.E.2d 50, 52-53 (2013) (citation omitted). Where the trial court “determines that the

current forum is inconvenient, [it] must make sufficient findings of fact to

demonstrate that it properly considered the relevant factors listed in N.C. Gen. Stat.

§ 50A-207(b).” Id. at 228-29, 750 S.E.2d at 53 (citation omitted). “We review the trial

court’s findings of fact to determine whether there is any evidence to support them.”

Velasquez v. Ralls, 192 N.C. App. 505, 506, 665 S.E.2d 825, 826 (2008) (citation

omitted).

 B. Discussion

 Pursuant to N.C. Gen. Stat. § 50A-207(a), a North Carolina court that has

jurisdiction under the UCCJEA to make a child-custody determination may “decline

to exercise its jurisdiction at any time if it determines that it is an inconvenient forum

under the circumstances, and that a court of another state is a more appropriate

forum.” N.C. Gen. Stat. § 50A-207(a) (2019). Before determining whether North

Carolina is an inconvenient forum, the trial court must “consider whether it is

appropriate for a court of another state to exercise jurisdiction.” Id. § 50A-207(b). In

making this determination, the trial court “shall allow the parties to submit

information and shall consider all relevant factors,” including but not limited to:

 - 14 -
 HALILI V. RAMNISHTA

 Opinion of the Court

 (1) Whether domestic violence has occurred and is likely to
 continue in the future and which state could best protect the
 parties and the child;

 (2) The length of time the child has resided outside this State;

 (3) The distance between the court in this State and the court in
 the state that would assume jurisdiction;

 (4) The relevant financial circumstances of the parties;

 (5) Any agreement of the parties as to which state should assume
 jurisdiction;

 (6) The nature and location of the evidence required to resolve the
 pending litigation, including testimony of the child;

 (7) The ability of the court of each state to decide the issue
 expeditiously and the procedures necessary to present the
 evidence; and

 (8) The familiarity of the court of each state with the facts and
 issues in the pending litigation.

Id. § 50A-207(b)(1)-(8).

 In its Dismissal Order, the trial court made the following Findings of Fact

regarding Section 50A-207(b)’s factors:

 a. With respect to [Section] 50A-207(b)(1), while no
 conclusive evidence was offered, the evidence presented supports
 that there may have been domestic violence by [Plaintiff] against
 [Defendant] and/or the minor child [Opal]. In March 2018, [Opal]
 began Trauma Focused Cognitive Behavioral Therapy in New
 York at Spence-Chapin Services to Families & Children, which
 continued in April and was interrupted for approximately six (6)
 weeks. Pursuant to a Stipulation entered May 18, 2018, and
 signed by the parties, their New York attorneys, and Judge
 Douglas E. Hoffman of the New York Supreme Court, [Opal] was

 - 15 -
 HALILI V. RAMNISHTA

 Opinion of the Court

re-enrolled and is currently receiving Trauma Focused Cognitive
Behavioral Therapy. Additionally, there are numerous domestic
violence proceedings pending in New York.

 b. With respect to [Section] 50A-207(b)(2), as of June 28,
2018, the minor children have been residing in New York for five
(5) months, and [Riley] resided in North Carolina for slightly less
than four (4) months, and [Opal] resided in North Carolina for
five (5) months, before moving to New York on January 11, 2018.
As it relates to [Riley], and as of June 28, 2018, he has spent more
time in New York than he has in North Carolina during his
lifetime.

 c. With respect to [Section] 50A-207(b)(3) and (4), the
distance between New York and North Carolina is not a slight
distance, but [Plaintiff] can better bear the cost of travel between
these two (2) states as his income is substantially greater than
[Defendant’s].

 d. With respect to [Section] 50A-207(b)(5), the Court
considered this factor and it does not apply to this case.

 e. With respect to [Section] 50A-207(b)(6), there is greater
evidence in New York than there is in North Carolina as it relates
to [Opal]. There is at least one (1) full year of her being in school
in New York as opposed to roughly four (4) months in North
Carolina from late August to December 2017, so there are likely
more teachers, school providers, and more people who have been
involved in [Opal’s] life that provide evidence to the court in New
York rather than in North Carolina. Additionally, from a medical
standpoint, there is a longer history in New York as opposed to,
at best, six (6) months in North Carolina. In terms of family and
friends, [Plaintiff’s] parents reside in North Carolina, and
[Defendant’s] parents do not reside in the United States.
However, there are numerous friends, coworkers, and more
people to provide testimony and evidence in New York as opposed
to North Carolina.

 - 16 -
 HALILI V. RAMNISHTA

 Opinion of the Court

 f. With respect to [Section] 50A-207(b)(7), New York and
 North Carolina have equal ability to expeditiously decide the
 issue of child custody.

 g. With respect to [Section] 50A-207(b)(8), New York and
 North Carolina have equal familiarity with the facts and issues
 in the pending litigation.

Based on these Findings, the trial court determined North Carolina was an

inconvenient forum and New York was a more convenient forum; therefore, the trial

court relinquished jurisdiction as it related to Riley.

 Plaintiff, again, does not challenge the trial court’s Findings of Fact regarding

its inconvenient-forum determination; accordingly, these Findings are binding on

appeal. See Koufman, 330 N.C. at 97, 408 S.E.2d at 731 (citations omitted). Instead,

Plaintiff first contends the trial court erred by considering “post-filing activities and

factors” and the trial court should have instead limited its inconvenient-forum

inquiry to whether North Carolina was an inconvenient forum at the time of filing

Plaintiff’s Complaint.

 A review of Section 50A-207, however, belies Plaintiff’s argument. First,

Section 50A-207(a) provides a trial court “may decline to exercise its jurisdiction at

any time if it determines that it is an inconvenient forum under the circumstances[.]”

N.C. Gen. Stat. § 50A-207(a) (emphasis added). Where this Statute allows the trial

court to decline exercising jurisdiction “at any time[,]” it necessarily follows the trial

court is not limited to considering whether North Carolina is an inconvenient forum

 - 17 -
 HALILI V. RAMNISHTA

 Opinion of the Court

only at the time of a plaintiff filing its complaint, but rather the trial court may

consider whether it is an inconvenient forum “under the circumstances” as they exist

after the filing of a complaint. Id. Further, in making this determination, the trial

court “shall consider all relevant factors” listed in Section 50A-207(b). Id. § 50A-

207(b). This Statute’s factors, however, are not confined only to the circumstances as

they existed at the filing of a plaintiff’s complaint but necessarily contemplate post-

filing circumstances as well, such as “[t]he relative financial circumstances of the

parties[.]” Id. § 50A-207(b)(4). Accordingly, the trial court did not err by considering

post-filing activities in its inconvenient-forum determination.

 Plaintiff next argues the trial court erred in its inconvenient-forum

determination because the trial court failed to find it was in the children’s best

interests for North Carolina to decline jurisdiction. In support of his argument,

Plaintiff cites our Court’s decision in Kelly v. Kelly, which held—“Without a showing

that the best interest of the child would be served if another state assumed jurisdiction,

North Carolina courts should not defer jurisdiction pursuant to [N.C. Gen. Stat. §]

50A-7.” 77 N.C. App. 632, 635, 335 S.E.2d 780, 783 (1985) (emphasis added). We

disagree.

 In Kelly, our Court considered whether a trial court erred in its inconvenient-

forum determination under the UCCJEA’s statutory predecessor—the Uniform Child

Custody Jurisdiction Act (UCCJA). See id. at 634-35, 335 S.E.2d at 782 (citation

 - 18 -
 HALILI V. RAMNISHTA

 Opinion of the Court

omitted); see also 1979 N.C. Sess. Law 110 (N.C. 1979) (enacting the UCCJA); 1999

N.C. Sess. Law 223 (N.C. 1999) (codified at N.C. Gen. Stat. § 50A-101 et seq.)

(repealing the UCCJA and enacting the UCCJEA). Both the UCCJA and UCCJEA

contained analogous inconvenient-forum provisions that required trial courts to

consider certain factors in determining whether North Carolina is an inconvenient

forum. See 1979 N.C. Sess. Law 110, § 1 (then-codified at N.C. Gen. Stat. § 50A-7);

N.C. Gen. Stat. § 50A-207.

 Relevant to this appeal, the UCCJA provided: “In determining if it is an

inconvenient forum, the court shall consider if it is in the interest of the child that

another state assume jurisdiction.” 1979 N.C. Sess. Law 110, § 1 (emphasis added)

(then-codified at N.C. Gen. Stat. § 50A-7(c)). Under the UCCJEA, however, a trial

court must “consider whether it is appropriate for a court of another state to exercise

jurisdiction” before determining whether it is an inconvenient forum. N.C. Gen. Stat.

§ 50A-207(b) (emphasis added). Further, the UCCJEA did not retain any of the

UCCJA’s language requiring a trial court to consider the interests of the child in its

inconvenient-forum analysis. See id. Therefore, Kelly’s holding that a trial court

should not defer jurisdiction under the UCCJA without a showing that it would be in

the best interest of the child has no application under the current UCCJEA.

Accordingly, the trial court did not err by not including a finding that relinquishing

jurisdiction over Riley was in the child’s best interest.

 - 19 -
 HALILI V. RAMNISHTA

 Opinion of the Court

 Furthermore, the trial court’s detailed Findings of Fact, which Plaintiff does

not challenge on appeal, illustrate it considered the relevant factors under Section

50A-207 based on the evidence the parties chose to submit to the trial court, and these

Findings of Fact support the trial court’s ultimate Conclusion relinquishing

jurisdiction over Riley because North Carolina was an inconvenient forum. See In re

M.M., 230 N.C. App. at 228-29, 750 S.E.2d at 52-53 (citations omitted). Therefore,

the trial court did not abuse its discretion. See id. (citations omitted).

 III. Lack of Jurisdiction

 Plaintiff lastly argues the trial court erred in its Conclusion of Law 6, which

provides: “This Court lacks subject matter jurisdiction to adjudicate the issue of child

custody regarding the minor children.” Plaintiff contends this Conclusion is “flatly

wrong” because the trial court had already determined North Carolina was Riley’s

home state and thus that North Carolina had subject-matter jurisdiction to

adjudicate the issue of child custody. See N.C. Gen. Stat. § 50A-201(a)(1).

Accordingly, Plaintiff asserts the trial court acted under a “misapprehension of law”

and therefore “the trial court’s decisions finding New York a more convenient forum

and declining to grant [Plaintiff] a new trial constitute abuses of the trial court’s

discretion[.]”

 - 20 -
 HALILI V. RAMNISHTA

 Opinion of the Court

 As Defendant correctly points out, however, Plaintiff’s argument “puts the cart

before the horse.” In its Dismissal Order, the trial court made the following

Conclusions of Law:

 1. The Court has jurisdiction to adjudicate [Defendant’s]
 Motion to Dismiss.

 2. Pursuant to [N.C. Gen. Stat. §] 50A-102, North Carolina
 is not [Opal’s] home state for the purpose of exercising jurisdiction
 to make an initial custody determination pursuant to [N.C. Gen.
 Stat. §] 50A-102.

 3. Pursuant to [N.C. Gen. Stat. §] 50A-102(7), North
 Carolina is [Riley’s] home state.

 4. Pursuant to [N.C. Gen. Stat. §] 50A-201(a)(1), North
 Carolina has jurisdiction to make an initial child custody
 determination regarding [Riley].

 5. However, pursuant to [N.C. Gen. Stat. §] 50A-207,
 North Carolina is an inconvenient forum under the circumstances
 regarding [Riley] and New York is a more convenient forum to
 exercise jurisdiction and make a child custody determination
 regarding [Riley].

 6. This Court lacks subject matter jurisdiction to
 adjudicate the issue of child custody regarding the minor
 children.

 7. [Defendant’s] Motion to Dismiss should be granted as a
 matter of law.

 As the trial court’s Conclusions make clear, the trial court first determined it

did not have subject-matter jurisdiction over Opal because North Carolina was not

her home state. See id. Regarding Riley, the trial court then concluded it did have

 - 21 -
 HALILI V. RAMNISHTA

 Opinion of the Court

jurisdiction over Riley but declined to exercise its jurisdiction after concluding North

Carolina was an inconvenient forum. Indeed, in its Decretal Section, the trial court

expressly stated, “North Carolina relinquishes jurisdiction over [Riley].” (emphasis

added). Thus, Conclusion of Law 6 simply recognizes the trial court no longer had

jurisdiction because it had already determined North Carolina did not have

jurisdiction over Opal and relinquished its jurisdiction over Riley. Accordingly, the

trial court did not act under a misapprehension of the law and did not err in

dismissing Plaintiff’s Complaint for lack of subject-matter jurisdiction.

 Conclusion

 Accordingly, for the foregoing reasons, we affirm the trial court’s Dismissal

Order and Rule 59 Order.

 AFFIRMED.

 Judges DILLON and BERGER concur.

 - 22 -